Syllabus.

# Richmond

## LANSTON MONOTYPE MACHINE COMPANY V. TIMES-DISPATCH COMPANY.

### January 15, 1914.

1. INJUNCTIONS—*Breach of Negative Covenants—Specific Performance.* Where specific performance is the object of the suit, the general rule is that an injunction will not be granted to restrain a defendant from violating negative covenants when the agreement is of such nature that it cannot be specifically enforced. An injunction restraining the breach of a contract is a negative enforcement of that contract.

2. INJUNCTIONS—*Negative Covenants as to Chattels—Adequate Remedy At Law—Equity.*—If a contract relates to chattels, a court of equity will not enjoin a breach of its negative covenants unless the legal remedy of damages is inadequate. The fact that adequate remedy at law exists for the violation of an agreement is always sufficient to prevent the interference of equity.

3. DAMAGES—*Remoteness—Sale of Chattels—Case in Judgment.*—The contract, in the case in judgment, was for the sale by the complainant to the defendant of certain type-setting machines upon the terms named in the agreement, and not an independant agreement by which the defendant undertook and agreed to operate the machines for the benefit of the defendant, and the object of the stipulations as to installing and operating the machines was merely to insure them a fair trial and to satisfy the defendant of their suitability and efficiency for the purposes for which they were sold. For the breach of such contract the complainant is entitled to recover such damages as might be naturally expected to flow therefrom, but not damages which may result from the substitution of rival machines in the place of those purchased of the complainant.

4. DAMAGES—*Remoteness—Breach of Contract—Collateral Agreements.* Damages cannot be recovered for the breach of any contract unless they be such as may be fairly supposed to have entered into the contemplation of the parties when they made the contract, that is, such as might naturally be expected to follow its violation.

They must be certain both in their nature and in respect to the cause from which they proceed, and they must be proximate and certain, or capable of being made certain, and not remote, speculative or contingent. If they were only such as would have been realized from other independant and collateral undertakings, although entered into in consequence and on the faith of the original contract, they are too uncertain and remote to be taken into consideration as a part of the damages by breach of the contract in suit.

Appeal from a decree of the Law and Equity Court of the city of Richmond. Decree for the defendant. Complainant appeals.

*Affirmed.*

The object of the bill in this case, which was filed by the Lanston Monotype Machine Company, a manufacturer of machines for casting and composing type called "monotypes," was to enjoin and restrain the Times-Dispatch Company, which publishes in the city of Richmond a newspaper called *The Times-Dispatch,* from removing certain monotype machines, made by the complainant, from the building of the defendant, and to prevent the latter from installing in its building more than two composing or type-setting machines other than "monotypes," and to compel the defendant newspaper company to operate the said "monotypes," which had been installed in its building under a contract with the complainant company.

The agreement between the parties, which was made in November, in the year 1912, sets out the reasons of the parties for entering into it as follows:

"Whereas, for several years past the Times-Dispatch has in the production of its paper made use of certain machines known as linotype machines; and whereas, the Monotype Company believes that the machines made by it, which are hereinafter referred to as monotype machines, are superior to the linotype machines for newspaper purposes,

and wishes the Times-Dispatch to cease using linotype machines and install monotype machines for the production of its newspaper; and

"Whereas, the Times-Dispatch is unwilling to install monotype machines in place of the linotype machines now used by it, unless it has definite and satisfactory assurances by the Monotype Company that its production of type will not suffer either in economy or efficiency by reason of the installation and operation of monotype machines; or that, if the Times-Dispatch does so suffer, the Monotype Company will indemnify, secure, and protect it from all loss so incurred; and

"Whereas, the Monotype Company is willing to enter into an agreement protecting the Times-Dispatch from all loss which may be suffered by it as a result of the installation of monotype machines.

"Now, therefore, this agreement witnesseth:"

The contract then sets out the undertakings of the complainant company, among which are the following:

"(A) That the Monotype Company agrees to install in the building of the Times-Dispatch, on south Tenth Street, in the city of Richmond, Virginia, twelve (12) monotype machines with necessary motors, molds and matrices for composing the news matter, heads and advertisements, except such of this matter as is now set by hand by the Times-Dispatch.

"(B) That the Monotype Company guarantees that this equipment will produce, with hand-set advertisements, at least nine-hundred and ten (910) columns per week; this matter to be produced in accordance with the requirements of the Times-Dispatch for its daily, Sunday and weekly issues just as similar matter is now produced for these papers.

"(C) That the Monotype Company will install without cost to the Times-Dispatch as many more monotype ma-

chines as may be necessary to give this guaranteed production, if the twelve machines specified above fail to do this."

By clauses "D" and "E" the complainant guarantees that the cost per column of type produced shall not exceed a certain sum, and provides how such cost is to be determined, etc. By other clauses it is provided, (clause "G") that the complainant shall not interfere with the management of the composition room or other department of the defendant; (clause "H") that it will use all reasonable efforts to supply the defendant with motors, machinists and other employees necessary to operate the monotypes when called upon to do so; (clause "I") that it will carefully inspect the "monotypes" every three months if desired; (clause "K") that it will pay the wages of the defendant's employees while learning to operate the monotypes before they are used in the production of the paper, and in order to give such instruction prior to the installation of the "monotypes," will establish a school and pay all the expenses thereof.

The defendant, "The Times-Dispatch, hereby covenants and binds itself to install and operate the monotype machines covered by this agreement and to pay the Monotype Company therefor the sum of fifteen thousand dollars ($15,000) on or before the first day of January, 1918. This amount to be paid in instalments of not less than fifteen hundred dollars ($1,500) a year. These payments to be made on the first day of July 1913, 1914, 1915, 1916, and 1917, and the balance to be paid on or before January 1, 1918. The Times-Dispatch further agrees to pay six *per cent.* (6%) interest from January 1, 1914, to date of payment of the several instalments specified above.

"(O) That the Times-Dispatch will use all reasonable effort to carry out the recommendations of the Monotype Company to the end that these monotype machines may be operated at the highest efficiency.

"(P)  That the Times-Dispatch will not install more than two composing machines, or type-casting machines, other than monotypes, and that if such other machines are installed the cost of their maintenance, repair and operation shall be kept separate and distinct from the cost of these monotype machines, and that the Monotype Company shall not be required to protect the Times-Dispatch from any loss to which it may be subjected by reason of the use of machines other than monotypes.

"(Q)  That the Times-Dispatch will repair and replace any damage by fire or other accidents to the monotype machines and equipment furnished under this agreement.

"This agreement shall remain in full force and effect until January 1, 1918, provided that the controlling interest of the Times-Dispatch remains in the present owners thereof, or any of them, or any of their wives or lineal descendants.  If at any time subsequent to the date of this agreement, and prior to January 1, 1918, the control of the Times-Dispatch shall pass into the hands of persons other than those hereinabove mentioned, then the Monotype Company may at its option terminate this agreement on a written notice of thirty (30) days to the Times-Dispatch; and in the event of such termination by the Monotype Company, any balance not then paid on the machines shall immediately become due and payable by the Times-Dispatch.

"The Times-Dispatch reserves the right to terminate this agreement any time after January 1, 1914, upon thirty (30) days' notice in writing to the Monotype Company, provided all payments due the Monotype Company before the date of this notice of termination shall have been made. These payments are to be retained by the Monotype Company as compensation for use of the machines and equipment furnished under this agreement."

It is alleged in the bill that the complainant manufac-

tures and sells monotypes of the kind described in the contract; that in the year 1909 it had installed a battery of monotypes for the *News-Leader*, a newspaper published in the city of Richmond, which were satisfactory and subsequently purchased by the News-Leader Company, which is owned and controlled by the same interests as the Times-Dispatch Company, both being corporations; that there has been for a number of years bitter rivalry between the company manufacturing the linotype machines and the manufacturers of monotypes, and that all manufacturers of the latter had been driven out of the market except the complainant; that the complainant felt that under the circumstances it would be worth thousands of dollars if it could enter into a contract with the Times-Dispatch to use its monotypes in place of the linotypes, which it had been and was using at the time the said contract was entered into; that it knew that there was opposition by certain officers and employees of The Times-Dispatch Company to the use of monotypes; that it knew that in order to get the best results from the use of its machines, if its machines were installed in the Times-Dispatch building, it must have the earnest co-operation of that company; that for these reasons it was willing to make an agreement upon much more favorable terms than sound business policy would have otherwise dictated; that it did make the said agreement, and, pursuant thereto, installed its twelve monotype machines, with their necessary equipment, in the defendant's building, and had complied with all the terms and provisions of the said contract; that while there was some difficulty experienced in the use of the monotypes, as is almost invariably the case with the operation of new machinery, there would have been no delay in the production of the paper if the defendant's agents and employees had given their promised co-operation in the use of the monotypes; that after various efforts on the part of the com-

plainant to get the defendant's agents and employees to
use or operate the monotypes as the complainant insisted
should be done, and was entitled under its agreement to
have done, the defendant, during the same month in which
the monotypes had been installed in its building, to-wit,
on the 28th day thereof, notified the complainant of its in-
tention to cease the use of the monotypes and to install
and have in use and operation other type-setting machines
in its building by the first day of the February following;
that "if the monotype machines of your complainant are
removed from the Times-Dispatch office and linotype ma-
chines substituted in their place it will damage this com-
plainant many thousands of dollars in excess of the amount
agreed to be paid for the machines installed, and prevent
their introduction into innumerable other printing estab-
lishments, and greatly retard the steady progress which
your complainant has made in supplanting the linotype
machines.  Indeed, it is impossible to estimate or calculate
the damage and loss which would result therefrom, and
for which your complainant could not be compensated in
damage in an action at law."

On the first day of February, in accordance with the
prayer of the bill, the court granted an injunction, but
provided in its order that it should expire on the 15th of
that month unless extended or enlarged by the court.  By
subsequent orders the injunction was amended and kept
in force until the 20th of March following, when it was
dissolved.  On the 20th of the next month a demurrer to
the bill was sustained and the bill dismissed.  From that
decree and certain other decrees entered in the cause, this
appeal was granted upon the petition of the complainant.

There are provisions in the agreement and allegations
in the bill other than those mentioned above, but they do
not seem to be material to a consideration of this appeal
in the view the court takes of the case.

*Munford, Hunton, Williams & Anderson* and *Thomas B. Gay,* for the appellant.

*McGuire, Riely & Bryan* and *Braxton & Eggleston,* for the appellee.

BUCHANAN, J. (after making the foregoing statement), delivered the opinion of the court.

One of the errors assigned, and the only one that it is necessary to consider, in the view the court takes of the case, is that the trial court erred in sustaining the demurrer to the bill and dismissing the same.

It is conceded, and if it were not it is clear, that the agreement between the parties is of such a nature that it is not susceptible of specific enforcement by the court. But it is insisted that, although the court was unable to specifically execute the contract, yet the case made by the bill entitled the complainant to an injunction restraining the defendant from violating the covenant contained in clause "P" of the agreement, by which it bound itself not to install in its printing establishment more than two composing or type-setting machines other than monotypes.

The general rule is that an injunction will not be granted to restrain a defendant from violating negative covenants when the agreement is of such a nature that it cannot be specifically enforced where specific performance is the object of the suit.  2 High on Injunctions (4th ed.), secs. 1109, 1162; 4 Pom. Eq. Jur. (3d. ed.), sec. 1341; 3 Elliott on Contracts, sec. 2345; 22 Cyc. 850-1.

Where the object of the suit is not to enforce specific performance of the agreement, which contains both affirmative and negative covenants, there are cases which hold that a court of equity may interfere by injunction to prevent the breach of a negative covenant, although the af-

firmative stipulations are of such a nature that they could not be specifically enforced; but, as said by High on Injunctions, section 1164, the cases upon this question are exceedingly conflicting and irreconcilable. While the authorities are conflicting as to whether or not such relief can be granted and under what circumstances it may be done, all the authorities seem to concur in the view that in no case will such an injunction be granted unless it appears that the complainant has no adequate remedy at law.

Pomeroy, in his work on Equity Jurisprudence, vol. 4, section 1341, says that "an injunction restraining the breach of a contract is a negative enforcement of that contract. The jurisdiction of equity to grant such injunction is substantially coincident with its jurisdiction to compel specific performance." *Grubb* v. *Moore,* 108 Va. 83, 60 S. E. 757.

Where the contract which is sought to be specifically decreed, or a breach of its negative covenants enjoined, relates to chattels, the universal test of the jurisdiction of a court of equity to grant such relief, both in England and in this country, is the inadequacy of the legal remedy of damages. 4 Pom. Eq. Jur., sec. 1341; 5 Do., sec. 299.

"The fact that ample remedy exists at law for the violation of an agreement," says High on Injunctions, sec. 1107, "is always sufficient objection to the interference of equity." 3 Elliott on Contracts, sec. 2279.

Unless, therefore, the facts alleged in the bill show that the remedy at law is inadequate, the demurrer was properly sustained and the bill dismissed. *Hudson* v. *Kleve,* 9 Gratt. (50 Va.) 379, 384-6; *Morrison* v. *Spear,* 10 Gratt. (51 Va.) 229, 230; *Ely, &c.,* v. *Johnson,* 114 Va. 31, 75 S. E. 748.

It appears from the bill and the agreement of the parties filed therewith as an exhibit that the complainant desired very much to make sale of its monotype machines to the

defendant and to have the latter operate them, and thereby to supplant the use of the linotype machines, and that if this result could be accomplished, the complainant expected that its business would be materially enhanced from having its machines used by the defendant, a leading and influential newspaper. It further appears from the complainant's pleading that the officers and some of the managing employees of the defendant were not satisfied that the complainant's monotypes were the best machines for the purpose of the defendant. The obligations of the defendant, under the agreement, were to install and operate the monotype machines of the complainant with a view of ultimately becoming the absolute owner of them at the price of $15,000, payable by installments becoming due, respectively, in the years 1913, to and including the year 1918, subject to the right of the defendant to cease their use and return them after notice at any time after January 1, 1914. The payment or payments made or installments due under the contract, up to the time the right to return, if the machines were returned, was exercised, were to be retained by the complainant as compensation for the use of its machines and equipment furnished under the contract. The defendant further bound itself to use reasonable efforts to operate the monotype efficiently and not to install more than two machines in its newspaper building other than monotypes.

While there are various stipulations in the agreement as to what the complainant was to perform and might be called upon to perform, the contract, as we understand and construe it, was for the sale of the complainant's machines upon the terms named therein, and not an independent agreement by which the defendant undertook and agreed to operate the machines for the benefit of the complainant. The operation of the machines provided for in the contract was not for the purpose of showing to the public or to

those using type-setting machines generally that the com-
plainant's machines were efficient in newspaper publishing,
and thereby to increase the reputation and market value
of the machines, but the object or purpose of operating the
machines in the manner provided for in the agreement was
merely to satisfy the defendant, its officers and employees,
of the suitableness and efficiency of the machines for the
purposes for which they were sold.  In other words, as
said by the trial court, taking the various stipulations on
both sides in connection with the right to terminate after
the end of the first year, it seems clear that the obligation
of the parties to install and operate was only for the pur-
pose, on the part of the complainant, to have the defendant
give the machines a fair trial, and, on the part of the
Times-Dispatch people, to satisfy themselves that the ma-
chines would produce type efficiently and economically
for them.

If this be the correct construction of the agreement be-
tween the parties, it is clear that there could be no recov-
ery at law or in equity for such injury to its business as
the bill alleges would result, viz.: "If the monotype ma-
chines of your complainant are removed from the Times-
Dispatch office and linotype machines substituted in their
place, it will damage this complainant many thousands of
dollars in excess of the amount agreed to be paid for the
machines installed, and prevent their introduction into in-
numerable other printing establishments and greatly re-
tard the steady progress which your complainant has made
in supplanting the linotype machines.  Indeed, it is im-
possible to estimate or calculate the damage and loss which
would result therefrom, and for which your complainant
could not be compensated in damage in an action at law."

Injuries frequently result in one way or another to the
business of one party to a contract by its breach on the
part of the other party, but damages cannot be recovered

for the breach of any contract unless they be such as may be fairly supposed to have entered into the contemplation of the parties when they made the contract—that is, such as might naturally be expected to follow its violation; they must be certain both in their nature and in respect to the cause from which they proceed, and they must be proximate and certain, or capable of being made certain, and not remote, speculative or contingent. *Perry Tie and Lumber Co.* v. *Reynolds,* 100 Va. 264, 269-70, 40 S. E. 919; *Western Union Tel. Co.* v. *Hall,* 125 U. S. 444, 8 Sup. Ct. 577, 31 L. Ed. 479, 483; 3 Elliott on Contracts, sec. 2131.

The damages, as was said in *Fox* v. *Harding,* 7 Cush. 516, and quoted with approval in *Western Union Tel. Co.* v. *Hall, supra,* "must be part and parcel of the contract itself, and must have been in contemplation of the parties when the agreement was entered into. But if they are such as would have been realized from other independent and collateral undertakings, although entered into in consequence and on the faith of the principal contract, then they are too uncertain and remote to be taken into consideration as a part of the damages by breach of the contract in suit." 3 Elliott on Contr., sec. 2133.

Tested by these well settled rules, it is clear that the complainant was not entitled to recover damages for injury to its business by reason of the defendant's breach. There is no allegation of fact in the bill which shows that the complainant did not have an adequate remedy at law to recover any and all damages to which it would be entitled resulting from breach of the agreement on the part of the defendant. This being so, the demurrer to the bill was properly sustained and the bill dismissed by the trial court.

*Affirmed.*