# Richmond

## Shenandoah Milling Company, Incorporated, and A. A. Roudabush v. Phosphate Products Corporation.

November 16, 1933.

Present, Campbell, C. J., and Epes, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*T. Justin Moore* and *William V. Ford,* for the plaintiffs in error.

*Harry M. Strickler, M. L. Walton* and *S. L. Walton,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

This action was instituted by notice of motion to recover the balance due on two notes, one dated April 23, 1931, due sixty days after date, in the sum of $3,342.27, the other dated June 4, 1931, for the same amount, payable sixty days after date, to the order of Phosphate Products Corporation, signed by Shenandoah Milling Company and payment guaranteed by A. A. Roudabush. Defendants filed a plea of set-off, claiming damages in the sum of $10,000. The jury allowed an offset of $1,000. Defendants moved to set aside the verdict, on the ground that the damages allowed were inadequate and not supported by the evidence. The court overruled the motion and entered judgment for plaintiff on the verdict of the jury.

Plaintiffs in error, defendants in the trial court, assign two errors: (1) The refusal of the trial court, to set aside the verdict and enter final judgment for the Milling Company in the sum of $8,500, less $4,113.29, balance due on the two notes; and (2) the refusal of the court to set aside the verdict and impanel another jury to assess damages for defendants; which assignments will be treated together.

Shenandoah Milling Company is a Virginia corporation engaged in the business of manufacturing both plain and self-rising flour. Phosphate Products Corporation is a non-resident corporation with a factory at Charleston, South Carolina, where it is engaged in manufacturing calcium acid phosphate, which is one of the ingredients mixed with plain flour to make it self-rising.

Shenandoah Milling Company, in 1926, began to use "Albaphos—80," which is the trade name for plaintiff's calcium acid phosphate, and on April 30, 1930, entered into a contract with plaintiff whereby it agreed for a period of one year from that date to use plaintiff's product exclusively in the manufacture of its self-rising flour, and during that period used five carloads.

The Milling Company had been somewhat dilatory in making settlements with plaintiff, so on April 23 and June 4, 1931, they made settlement by the notes upon which this action is based for the balance due on the shipments.

The Milling Company had numerous complaints of the self-rising flour from its customers. It is claimed that some of these complaints were communicated to plaintiff and it made several suggestions as to the method of manufacture, without any appreciable results.

In July, 1931, the Milling Company ordered another carload of the acid phosphate from plaintiff, who declined to ship because the Milling Company had not made settlement in accordance with its contract.

In February, 1932, this action on the notes was instituted by plaintiff. The Milling Company, without having made any demand upon plaintiff for settlement of damages alleged to have been suffered, filed a plea of set-off, claiming damages for breach of implied warranty. Many pages in the briefs are devoted to the question of whether or not the doctrine of implied warranty applies to the contract between the parties. No objections were made to the instructions given; they, therefore, became the law of the case, which eliminates this question from our consideration.

Defendants moved the court to set aside the verdict allowing the Milling Company $1,000 damages, and to enter a judgment in its favor for a definite sum, to-wit, $8,500, on the theory that it had alleged and proved with reasonable certainty this amount of loss.

The difficulty we have is in ascertaining just the amount of damages and the basis upon which defendants rest

their claim therefor. In the special plea the Milling Company alleged (1) that "a great quantity of self-rising flour, in the manufacture of which the said calcium acid phosphate had been used, became and was wholly lost;" (2) "and in addition thereto, many old and regular customers who had previous to this time bought self-rising flour from the Shenandoah Milling Company, became and were wholly lost to the said defendants;" that by reason of the premises, defendant had suffered a loss and damages amounting to $10,000, and prayed for a judgment over against plaintiff in the sum of $5,886.75.

In the particulars of the cross-claim, defendants claimed damages in the sum of $13,500, and alleged that the damages arose in four different ways, as follows:

| | |
|---|---|
| Damages sustained on account of "rebates, adjustments, allowances, returns, and credits allowed" to customers on account of breach of implied warranty | $ 2,500.00 |
| Loss sustained by cancellation of customers' contracts for profits at $1.00 per barrel on 5,000 barrels | 5,000.00 |
| Loss sustained because of return of self-rising flour, including freight and carrying charges | 1,000.00 |
| Amount of damage sustained by loss of customers and purchasers of self-rising flour | 5,000.00 |
| Total | $13,500.00 |

It will be noted that there is a difference of $3,500 in the amount of damages claimed in the plea and in the particulars. The evidence tending to show the amount of damages is confined to the testimony of one witness, A. A. Roudabush, as follows:

"Q. I hand you that memorandum which I understand you made and ask you to state to the jury what losses you sustained during this twelve-month period as a result of

this trouble. Just briefly explain, you may read each amount.

"A. Littleton Feed & Grocery Co. _____$    693.00
    Hicks Supply Co. _____    93.66
    Hoots Bros. _____    2,465.00
    McGee & Bowlan _____    894.10
    N. L. Steadman _____    320.03
    Watson Feed Co. _____    324.07
    Cantrell Co. _____    123.58
    Fountain Inn Merc. Co. _____    99.90
    Glade Feed Co. _____    210.00
    K. V. Coleman _____    27.87
    John A. Gill Gro. Co. _____    231.35
    M. G. Rose & Co. (contracts) _____    6,092.63
    W. E. Harvey _____    56.93
    Grogan Stores _____    236.84
    C. E. Geoghegan Sons Co. _____    18.82
    Various contracts cancelled _____    432.25
    Morris & Co. _____    70.28
    Flour allowances (deductions from in-
        voices as paid) _____    418.37

        Total _____$12,788.66

"Q. What was the character of those deductions?

"A. They were on flour—rather than have it shipped back, some of it we would try to adjust with the customers, making deductions of from 50c to $2.00 per barrel. Various ways."

In the particulars of the cross-claim we are definitely informed of the basis upon which defendants claimed damages, but in the proof we are told that the losses were computed in "various ways." In the particulars it is stated that defendants claimed loss of profits because customers had cancelled their orders, and that these profits amounted to $1.00 per barrel.

. We notice in the proof that one of the eighteen items

listed is, "Hoots Bros. $2,465.00." Hoots testified that because there was odor in the self-rising flour he cancelled an order, or contract, for "about 2,000 * * * (barrels) as well as I remember." There is no testimony showing the profit which the Milling Company made on each barrel. Roudabush testified that in settlements with customers for flour delivered, he made deductions varying from fifty cents to two dollars per barrel, but this could not apply to orders not filled. The largest item of loss listed is that of M. G. Rose & Company for $6,092.63, and following the name, in parentheses, is the word "contracts." No explanation is offered for this amount of damage. If by this item is meant flour ordered, but cancelled because of the bad odor, it is an item of profit, but we do not know the basis upon which profit is calculated. The same criticism may be made of another item listed "various contracts cancelled, $432.25."

"Ordinarily, a plaintiff will not be entitled to recover profits or expected gains, for they are generally conjectural and too remote. But if it be shown that the loss of profits or gains was the natural and proximate result of the wrongful act, *and their extent is satisfactorily proved, they may be recovered.*" (Italics supplied.) *Burruss* v. *Hines,* 94 Va. 413, 416, 26 S. E. 875, and authorities cited; *Alleghany Iron Co.* v. *Teaford,* 96 Va. 372, 31 S. E. 525; *Grubb* v. *Burford,* 98 Va. 553, 560, 37 S. E. 4; *Raven Red Ash Coal Co.* v. *Herron,* 114 Va. 103, 115, 75 S. E. 752.

The uncontradicted testimony is that the Milling Company had been, more or less continuously, using the product of plaintiff since 1926, and it was not until August, 1931, that it discovered there was anything wrong with the calcium acid phosphate. After making this discovery, it made four payments, aggregating $2,500, on the notes. The last payment was dated November 25, 1931.

Notwithstanding these admitted facts, the Milling Company in attempting to establish its claim for damages, failed to prove the number of barrels shipped to different customers, the dates of shipment, and whether the

amounts set opposite the names of the customers in the memorandum filed were deductions made on the sale price, flour returned, or contracts cancelled, or whether they were for loss of customers, and whether they were made before or after August, 1931.

The trial court held that defendants were not entitled to recover for loss of customers, as the damage flowing therefrom was too uncertain and indefinite, and thereby eliminated the sum of $5,000 from the damages claimed in the particulars.

We are unable to ascertain from the testimony of Mr. Roudabush whether or not any of the items of loss listed by him include any sums claimed for loss of customers. The names of the customers and the amounts fixed opposite their names, which amounts were arrived at by various ways, is not proof of the amount of damage with reasonable certainty.

■■ It is elemental that a litigant claiming damages for breach of contract is required to prove (1) a valid contract; (2) a breach of that contract; (3) damages such as may be fairly supposed to have entered into the contemplation of the contracting parties when they made the contract, that is, such as might naturally be supposed to follow its violation. *Lanston Monotype Machine Co.* v. *Times-Dispatch Co.*, 115 Va. 797, 80 S. E. 736. The failure of the party claiming damages to prove any one of the three essential elements is fatal to his case. To prove damages, it is not sufficient for the litigant to make a memorandum before the trial estimating his losses, and then at the trial read the memorandum and state, "That is the amount of my loss." "But how did you arrive at it?" "In various ways." This is particularly true when in the estimated amount of loss there is included a loss of profits, and possibly damage for the loss of customers.

■ When all of defendants' evidence on the quantum of damage is considered, it clearly appears that the Milling Company has no right to complain because the jury fixed the amount of its damages at $1,000.

■ Plaintiff moved this court to set aside the verdict and enter judgment for it on the full amount admittedly due on the two notes. The objection to this motion is that it was never made to the trial court. This is an appellate court. Its duty is to pass upon the rulings of trial courts, not to hear original motions of this nature. If we accept as' true, as the jury had a right to do under the instructions, the evidence of defendants, the Milling Company did suffer substantial loss. It is the extent of that loss which they failed to prove with reasonable certainty. It is for that reason that we refuse to disturb the verdict on their motion.

On the same day that defendants notified plaintiff's attorney that they would present the bills of exception to the trial judge for his signaure, and after the judge had signed the bills of exception, attorney for plaintiff, without notice to opposing counsel, presented his bill of exception to the judge, which was signed by him over the objection of counsel for defendants. This bill reads thus:

■ "After the defendant had introduced his evidence a motion was made by the plaintiff to strike out the evidence of the defendant for the seven grounds assigned, as they appear in the record, which motion was denied and the plaintiff excepted."

The object of bills or certificates of exception "is to put that into the record which would not otherwise be there or appear." Burks' Pl. & Pr. (2d Ed.) 508, 506. The seven grounds or reasons which it is stated were urged upon the trial court in support of the motion are not set forth in the bill, neither is any specific reference made to any other bill containing the alleged seven grounds. Judge Riely, in *Holleran* v. *Meisel,* 91 Va. 143, 145, 21 S. E. 658, stated: "It is the office of a bill of exception to set forth a specific and definite allegation of error, and so much of the evidence as is necessary to a clear apprehension of the propriety or impropriety of the ruling made by the court, and if it fails to do this, the exception will prove unavailing." If we consider this bill of exception alone,

or along with the entire record as transcribed by the clerk, we do not know what were the seven grounds urged upon the trial court to set aside the verdict.

■ Defendants contend that the judge should not have signed this bill of exception, because Code, section 6252, requires that before the trial judge shall sign a bill of exceptions it shall appear to him in writing that the opposing party, or his counsel, has had reasonable notice of the time and place the bill of exceptions will be presented for authentication, and that no such notice was given. It affirmatively appears that such notice was not waived. Judge Gregory, in *Harrison* v. *Com.,* 159 Va. 986, 167 S. E. 251, said:

"Speaking of the pertinent part of the statute (section 6252), this court said in *Scholz* v. *Standard, etc., Ins. Co.,* 145 Va. 694, 134 S. E. 728, 729, that 'the statute is an important one, and compliance with it is necessary to the validity of the bill of exception. * * * If the notice was not in fact given, the act of signing the bills of exception was a nullity, and they cannot be considered.'" See *Nachman* v. *Chatham-Phenix Nat. Bank, etc., Co., ante,* page 576, 171 S. E. 676, announced at this term of court.

■ In this case it does not appear that plaintiff urged the trial court to make any correction or addition in the certificates of exceptions and other incidents of the trial signed by the judge. When a litigant, by bill or certificate of exception, attempts to make all the proceedings of the trial of a case a matter of record and both sides are present when the papers are presented to the trial judge, it is his duty to see that the exceptions preserved by both sides are truly set forth therein. This may be done by addition to, or corrections of, the bills presented, or by a separate bill. In such case the statute does not contemplate additional notice.

Plaintiff further contends that admitting it did not comply with the provisions of Code, section 6252, under Rule VIII, it has the right to assign cross-error. That rule specifically provides that although the whole record may

be before the court, it will not consider any rulings of the trial court against the defendant in error if it appears that there has been a waiver of the right to insist upon cross-error.

The record and petition consist of 141 printed pages. During the taking of the testimony, the court made twenty-one distinct rulings on motions and objections raised by counsel, five against contention of plaintiffs in error and sixteen against defendant in error; to some of the rulings no exceptions were noted, to others there were elaborate notes of exception.

Judge Burks, in *Robertson's Ex'r* v. *Atlantic Coast Realty Co.,* 129 Va. 494, 106 S. E. 521, 528, said: "This court cannot be burdened with a search through a stenographer's report to ascertain what objections have been made to the reception of evidence and the rulings of the trial court thereon. If they are relied on, they must be made parts of the record by proper bills of exception, or certificates of exception. Otherwise, they will be deemed to have been waived. No proper exception to the ruling complained of appearing in the record, the propriety of the ruling is not open for investigation."

While it is our purpose to adhere to this rule, except where modified by Rule XXIV, in this particular case we have diligently searched the record and find that at the conclusions of the introduction of evidence for plaintiffs in error, defendant in error made the following motion:

"If Your Honor please, I move that you strike out the evidence as presented on the grounds that they have not proved a breach of contract on the grounds that the phosphate we sold them was not according to contract."

This is followed by a notation, evidently made by the stenographer:

"The motion was made to strike out the evidence, for reasons assigned in writing, was overruled, to which action of the court the plaintiff excepted."

The only reason urged upon the court to strike the evi-

dence appears from this exception to be that defendant had not proved a breach of contract. On that point we think there was sufficient evidence to carry the case to the jury.

The court, at the request of defendants, gave three instructions; instruction A dealt with implied warranty, instruction B submitted to the jury the question of breach of the implied warranty, and instruction C was on the measure of damage. There were six instructions given at the request of plaintiff. Instruction No. 10 was as follows:

"The court instructs the jury that the Phosphate Products Corporation, the plaintiff, is entitled to recover from the Shenandoah Milling Company and A. A. Roudabush the balance due on the notes sued on in this case, to-wit: The principal sum of four thousand one hundred thirteen dollars and twenty-nine cents ($4,113.29) with interest from maturity of the several notes, but in this connection the jury may consider the claim of set-off asserted by the defendant as to which the court has instructed the jury in other instructions."

No objection was made by either party to the instructions given, and, as heretofore stated, they became the law of the case and all parties to the action are bound thereby.

When the jury returned its verdict, not only did plaintiff fail to join in defendants' motion to set the verdict aside; it resisted this motion, and when petition for a writ of error was presented to a member of this court it filed a brief opposing the granting of the writ, in which is found the following:

"Truly the appellant should be content in receiving a reduction of $1,000 credit on the notes and all of this when appellants were entitled to nothing, absolutely nothing, in any aspect of the record as a whole presented in this case."

As said by Judge Holt in *Fox* v. *Mason,* 139 Va. 667, 124 S. E. 405, 406: "This general rule has been changed by statute, see Code, section 6254, but it is still true that a

plaintiff who is satisfied with the verdict will not be heard to complain of instructions. What boots it to him if they are wrong?" To the word "instructions" used in the above quotation, we might add, the refusal of the court to strike out opponent's evidence.

While Code, section 6254, provides that a failure to make a motion for a new trial shall not be deemed a waiver of any objection made during the trial, if such objection be properly made a part of the record, when plaintiff failed to renew its motion, failed to object to the instructions submitting the entire case to the jury, and failed to move the court to set aside the verdict and enter judgment for it, plaintiff waived its right to assign cross-error under Rule VIII.

On consideration of the whole case, we are of opinion that the record discloses no reversible error, and the judgment is affirmed.

*Affirmed.*