# Kenneth D. Duggin, Trustee

## v.

# Betty B. Williams

Record No. 831653

March 6, 1987

Present: All the Justices

*James R. Tate (Douglas E. Bywater; Andrew M. Vanderhoof; Tate and Bywater, Ltd.,* on briefs), for appellant.

*Thomas R. Folk (Stephen L. Best; John P. Rowley, III; Hazel, Beckhorn and Hanes,* on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

By amended counterclaim filed in the trial court, Kenneth D. Duggin, Trustee (Duggin), sought damages for an alleged breach of contract by Betty B. Williams. In a jury trial, during the presentation of Duggin's evidence, the trial court sustained Williams's motion to exclude Duggin's proffered evidence of damages. The court, then concluding that Duggin could not prove any damages even if the evidence established breach of contract by Williams, entered final judgment for Williams on the counterclaim. On appeal, Duggin challenges the evidentiary ruling and the final judgment of the trial court.

In July of 1978, a contract was executed for the sale by Williams to Duggin of 4.5789 acres for $950,000, of which the sum of $20,000 was deposited, subject to the contingency that Duggin obtain zoning to permit shopping-center development. Duggin was unsuccessful in his efforts to have the property rezoned by the Board of Supervisors for shopping-center development, but rezoning for office use was approved. By contract addendum dated December 19, 1979, Duggin and Williams agreed that Duggin could accept the property for office use at a reduced price if the denial of rezoning for shopping-center development were not reversed in court. The addendum provided that if settlement were not completed by June 15, 1981, either party could cancel the contract pursuant to the terms of the original agreement. In June of 1980, the trial court sustained the action of the Board of Supervisors in denying Duggin's application for rezoning.

On August 8, 1980, Duggin and Centennial Contractors, Inc. (subsequently, Centennial Development Corporation, but referred to in either form as Centennial), entered into an agreement for a future assignment whereby, subject to certain conditions, Duggin agreed to assign the contract of sale to Centennial or, if settlement occurred before April 17, 1981, to purchase the property from Williams and convey it to Centennial. The assignment fee of $119,673.60, including a $30,000 deposit made at the time of the agreement, was to be paid to Duggin upon vesting of title to the

property in Centennial. Williams did not become aware of this assignment agreement until February of 1981.

On June 30, 1981, Williams's attorney, C. Douglas Adams, wrote Duggin that, because he had failed to settle on or before June 15, 1981, he was in default under the contract of sale and had forfeited his deposit. Duggin replied by letter to Williams dated July 10, 1981, that Williams had the right to cancel the contract but only upon written notice and refund to Duggin of his deposit and additional money loaned by him to Williams at a favorable rate of interest.

By an assignment and assumption agreement dated July 22, 1981, Duggin assigned to Centennial "all of the right, title and interest" of Duggin in the contract of sale with Williams, subject to the terms of their earlier agreement. By letter dated July 23, 1981, Williams notified Duggin of her cancellation of the contract. On the same date, Williams entered into a contract to sell the property to her attorney, Adams, under which Williams would receive more than Duggin had agreed to pay under his contract.

On July 24, 1981, Centennial's counsel notified Williams that settlement under the assigned contract would take place on July 29, 1981. Williams did not attend the proposed settlement, and no closing took place.

In August of 1981, Adams offered to sell the Williams property to Centennial for less than the price specified in the Duggin assignment. Subsequently, Centennial instituted a suit against Williams for specific performance of the contract but had this cause dismissed with prejudice in May of 1982. Centennial and Williams executed a general release, dated May 17, 1982, under which each released the other from any liability of any kind. On July 16, 1982, Duggin and Centennial executed a covenant not to sue under which Duggin received the $30,000 previously deposited by Centennial, plus interest.

In his amended counterclaim, Duggin alleged that he retained an interest in the contract of sale following the assignment. Alleging that Williams's willful refusal to make settlement was a breach of the contract, he sought damages in the amount of $89,673.60 (the assignment fee less the $30,000 received from Centennial), with interest, costs, and attorney's fees. At trial, he offered evidence of three items of damages: the assignment fee of $119,673.60, interest on the fee less credit for the payment of $33,219.31 from Centennial, and additional interest on the deposit

of $20,000 less credit for interest actually earned on the deposit. The total amount claimed, with interest computed through June 23, 1983, was $126,538.01.

Williams objected to the admissibility of this evidence of damages on the ground that the alleged damages were not within the contemplation of the parties when they entered the contract. The court ruled the evidence inadmissible, saying Duggin could not calculate his damages by what the assignment fee would have been. Duggin then argued he was entitled as damages to the increased fair market value of the property. The court, however, ruled that he could not change his theory of recovery to seek damages based on increase in fair market value, especially when, in the court's view, the evidence was insufficient to show value.

The court ruled that the measure of damages for Centennial would have been the difference between the contract price and fair market value, but Centennial had released Williams from liability; that Duggin, having assigned the contract to Centennial, was not entitled to recover such damages; that Duggin was not entitled to recover the assignment fee from Williams because it had not been within the contemplation of the parties when they entered into the contract of sale; and that, even had Duggin been entitled to damages other than the assignment fee, he could not recover because the only item of damages Duggin had pleaded was the assignment fee.

On appeal, Duggin challenges these rulings of the trial court, contending that he retained an interest in the contract after the assignment and therefore had standing to sue Williams for breach; that his counterclaim was sufficiently pleaded to allow recovery of damages measured by the difference between contract price and market value; that the assignment fee was admissible as evidence of market value; and that loss of profits, measured by the assignment fee, was within the contemplation of the parties and was therefore recoverable as damages. We do not here address the merits of the first three contentions because our ruling on the fourth is dispositive of the appeal.

It has long been held in Virginia that loss of profits may be recovered in a breach of contract action only if they are such that can be fairly supposed were within the contemplation of the parties when the contract was made. *Roanoke Hospital* v. *Doyle and Russell*, 215 Va. 796, 801-02, 214 S.E.2d 155, 160 (1975); *Wash. & O.D. Ry.* v. *Westinghouse*, 120 Va. 620, 635, 91 S.E.

646, 647 (1917), *aff'g on rehearing*, 120 Va. 620, 89 S.E. 131 (1916); *Lanston M. Co.* v. *Times-Dispatch*, 115 Va. 797, 807-08, 80 S.E. 736, 739 (1914). Damages within the contemplation of the parties are those actually foreseen or reasonably foreseeable. *Roanoke Hospital*, 215 Va. at 801 n.4, 214 S.E.2d at 160 n.4.

When Williams and Duggin executed the contract of sale in March 1978, Duggin planned to build a shopping center on the property. Indeed, the contract was made contingent upon his obtaining the requisite zoning for this development. In December 1979, when it appeared Duggin would fail in this regard, the parties executed an addendum to their contract that retained the zoning contingency but provided that Duggin "may accept an office use" and purchase the property at a reduced price. When the original contract was executed and later when the addendum was agreed to, Williams knew of no plans of Duggin to sell the property, understanding only that he would develop it himself, either as a shopping center or as an office complex.

Only upon learning of the trial court's ruling in June 1980 sustaining the denial of zoning, more than two years after execution of the original contract of sale, did Duggin begin to explore the option of assigning or selling the property to another developer. Moreover, the actual assignment agreement was not executed until July 1981, more than three years after he entered into the contract with Williams.

■ Upon this evidence, Duggin is not entitled to damages based on the loss of the assignment to Centennial. The record is devoid of any evidence that such an assignment was in the contemplation of the parties upon their entering into the contract of sale or the addendum. We cannot say that, when she contracted with Duggin, Williams reasonably should have foreseen that Duggin would assign the contract for sale of the property at a profit of $119,673.60 in a transaction that Duggin himself did not even consider until more than two years after the contract was made. *See Spangler* v. *Holthusen*, 61 Ill. App. 3d 74, 82, 378 N.E.2d 304, 310 (1978) (sellers with general knowledge that buyer was land developer and might sell part of the farm conveyed were not charged with knowledge that developer would assign his interest

in the contract, only two weeks after the contract was executed, for a $153,250 profit).

We will affirm the judgment of the trial court.

*Affirmed.*