## CIRCUIT COURT OF FAIRFAX COUNTY

International Computer Networks

v.

Computer Personalization Services, Inc.

November 30, 1994

Case No. (Law) 129079

BY JUDGE STANLEY P. KLEIN

Plaintiff International Computer Networks ("ICN") filed this action claiming damages as a result of Defendant Computer Personalization Services, Inc.'s ("CPSI") failure to pay for a computer printer sold by ICN to CPSI. CPSI counterclaimed alleging damages for breach of express and implied warranties. After hearing the evidence and argument of counsel at trial, the Court took the matter under advisement and requested that counsel address certain legal issues in post-trial memoranda. The Court has considered the memoranda and the relevant authorities and for the reasons hereinafter set forth, grants judgment to the Plaintiff in the sum of $10,191.81 plus costs and dismisses the counterclaim.

## I. *The Factual Background*

ICN entered into a contract with CPSI for the sale of a "Kentek K-30" laser printer in February 1993. According to the testimony of Stephen Bennett, the sales representative for Plaintiff ICN, a representative of the Defendant contacted him because Defendant wanted a high speed printer with the ability to print 30 pages per minute, at variable paper and envelope sizes between 6 x 9 and 11 x 17. Bennett testified that Kevin Sutton, CPSI's representative, suggested that they look into the Kentek K-30 printer and asked Bennett if he would get more information on the printer and quote him a price. In response to this request, Bennett passed on to the Defendant, by way of facsimile, a specification sheet which, according to the testimony of Sutton, indicated that the printer had the capability of printing 6 x 9 inch envelopes.[1] Bennett testified that the representations he made were those in the specification sheet but acknowledged that in his quote to the Defendant he called the Kentek an "envelope printer."

Thomas Harvey, former sales manager for the Plaintiff, testified that prior to Bennett's request, he had not heard of the Kentek printer and the Plaintiff had never sold such equipment. Harvey testified that no specialized warranties were given but admitted that he promised the Defendant that he would see to it that the printer worked according to the manufacturer's specification sheet.

Five witnesses testified for the Defendant either in court or by deposition. These witnesses testified that the only reason that CPSI was interested in purchasing a new printer was because of CPSI's need to print 6 x 9 envelopes for a large contract that it had entered into. Richard Geske, president of CPSI, testified that their other printers were sufficient to care for their flat paper printing needs.

The defense witnesses established to the Court's satisfaction that the Kentek printer never was able to print the 6 x 9 envelopes. Representatives of CPSI made this fact known to ICN within a very short time after the printer was delivered. Kentek's authorized representative attempted to repair the machine but was unsuccessful. Representatives of CPSI advised ICN that they wanted to return the printer. As a result of requests from ICN's representatives to "work with us to get it right," CPSI did not then return the machine. Approximately four weeks later, the printer was left at

---

[1] Bennett testified that the specification sheet stated that the printer had the capability of printing envelopes which were 6½ x 9½ but he was unsure whether the sheet stated that the printer would print envelopes which were 6 x 9.

ICN's loading dock without its cables, packaging or boxes. At least 50,000[2] pages had been printed by the machine in the approximately six weeks from its delivery to its return.

CPSI representatives testified that the printer had been used for a few profitable projects while in their possession, but its failure to print the envelopes had caused CPSI to lose the major contract which necessitated its purchase.

## II. *Rejection or Revocation of Acceptance by CPSI*

Defendant CPSI has argued in its post-trial brief that it effectively rejected the printer, or in the alternative, effectively revoked its acceptance. Under the UCC "perfect tender rule," a buyer may reject a tender of goods prior to acceptance, if they fail in any respect to conform to the contract. Va. Code § 8.2-601. "Acceptance" of goods is deemed to occur not only when the buyer manifests his acceptance after a "reasonable opportunity to inspect the goods," but may also be implied by a failure to make an effective rejection after a reasonable opportunity to inspect, i.e., failure to give notice of rejection within a reasonable time, or by the performance of any act inconsistent with the seller's ownership. Va. Code §§ 8.2-606, 8.2-602; *Flowers Baking Co. v. R-P Packaging, Inc.*, 229 Va. 370, 377 (1985). Defendant CPSI admittedly printed over 50,000 pages on the printer. The Court is not persuaded that the printer was initially rejected by CPSI.

Even after acceptance of goods a buyer may "revoke" his acceptance under limited circumstances.[3] As a general rule, a buyer may not revoke acceptance based on any defect of which he had knowledge at the time of acceptance. Va. Code § 8.2-607.[4] Additionally, a buyer may only revoke acceptance of a good if the nonconformity "substantially impairs its value to him." Va. Code § 8.2-608. *See Gasque v. Mooers Motor Car Co.*, 227 Va. 154, 160 (1984) *citing Tiger Motor Co. v. McMurtry*, 284 Ala. 283, 224 So. 2d 638 (1969) ("A buyer's right to revoke acceptance does not

---

[2] ICN's customer representative testified that the machine listed 149,000 sheets when it was returned.

[3] The legal effects of rejection and revocation are virtually the same; Va. Code § 8.2-608(3) states "[a] buyer who so revokes has the same rights and duties with regard to the goods involved as if he rejected them."

[4] An exception to this rule lies where the acceptance was made on the reasonable assumption that the nonconformity would be seasonably cured. Va. Code §§ 8.2-607, 8.2-608.

arise from every breach of warranty, notwithstanding the availability of damages for the breach; it arises only where the value of the goods to the buyer is substantially impaired.")

In determining whether the impairment is substantial for purposes of this section, the Court will look not to the diminution of the value of the goods on the open market, or to the average buyer, but rather should look to the impairment of value to the particular buyer involved. Whether such impairment is present is a question to be determined by the trier of fact. *Gasque*, 227 Va. at 160, *citing Champion Ford Sales, Inc. v. Levine*, 49 Md. App. 547, 433 A.2d 1218 (1981); *Asciolla v. Manter Oldsmobile-Pontiac, Inc.*, 117 N.H. 85, 370 A.2d 270 (1977).

Such a revocation must always occur within a reasonable time after the buyer discovers or should have discovered the grounds for revocation and before any substantial change in the condition of the goods which is not caused by their own defects. Va. Code § 8.2-608(2). In determining whether the remedy of revocation is available, the fact-finder must resolve (1) whether the buyer unreasonably delayed giving notice of revocation, (2) whether the condition of the goods has substantially changed, and (3) whether the buyer made unjustified use of the goods after giving notice of revocation. The buyer has the burden of proof on these issues by a preponderance of the evidence. *Gasque*, 227 Va. at 160.

Plaintiff argues *inter alia* that the Defendant's purported revocation was untimely. The Court rejects this argument because the Defendant made its revocation of acceptance known to ICN shortly after the printer was delivered. The printer was not returned in a timely manner because CPSI agreed to allow ICN to work with the manufacturer's representative to attempt to have the printer print 6 x 9 envelopes. The Court however finds that CPSI has failed to meet its burden of proof on the remaining two revocation issues. Notwithstanding the testimony at trial that this printer was purchased solely to meet CPSI's need to print 6 x 9 envelopes for one major contract, over 50,000 sheets were printed by CPSI during a time frame when it was claiming that the goods were non-conforming. No evidence was adduced at trial that Plaintiff instructed Defendant to continue to print such a substantial number of sheets. Plaintiff merely requested that Defendant give it an opportunity to see to it that the printer performed consistent with the manufacturer's specifications. These sheets were printed not only for the major contract but also for other contracts on which CPSI admits that it made a profit. CPSI presented no evidence as to why these sheets were printed on the K-30 printer rather than its other

printers, which CPSI claimed were sufficient to meet their flat sheet needs. In addition, when the printer was returned, it was simply left on a loading dock without cables, packaging or boxes. CPSI offered no explanation as to why the printer was left in this manner. One need not be an expert in this area to conclude that the re-sale value of this printer without these items would be substantially diminished. Defendant's continued use of the printer and its failure to return it in a reasonable condition were inconsistent with its duties as a bailee. The Court finds that the Defendant has failed to meet its burden of proving the commercial reasonableness of its actions and thus there was no effective revocation of acceptance of the printer. *See* Va. Code § 8.2-607 and *Gasque, supra.*

In *Gasque v. Mooers Motor Car Co.*, the plaintiffs, after delivery, discovered numerous defects in a new car purchased from the defendant. Five unsuccessful attempts were made to correct the defects after which time the plaintiffs demanded rescission of the sale and return of the purchase price, or replacement of the car. Between repairs the plaintiffs continued to drive the car and at the time the plaintiffs demanded rescission or replacement the car had been driven 5,400 miles. By the date of the trial the car had been driven over 8,000 miles.

### III. *Counterclaim for Breach of Warranty*

#### A. *Express Warranty*

Because an election between the remedies of revocation of acceptance and recovery of damages for breach is no longer required under the Virginia Code, CPSI is not precluded from asserting its counterclaim for breach of warranty. *See* Va. Code § 8.2-608. Defendant asserts that pursuant to the sale of the printer, ICN made an express warranty guaranteeing that the printer would effectively print 6 x 9 envelopes. Va. Code § 8.2-313 states, in part:

> (1) Express warranties by the seller are created as follows:
>
> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description . . . .

> (2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

The Supreme Court of Virginia has interpreted subsection (1)(b) of this statute to make a seller's description of goods, that is not mere opinion, a representation that defines his obligation to the buyer. *Daughtrey v. Ashe*, 243 Va. 73, 77 (1992). "If one who has superior knowledge makes a statement about the goods sold and does not qualify the statement as his opinion, the statement will be treated as a statement of fact." *Id.* at 77, *citing Fensom v. Rabb*, 190 Va. 788, 797 (1950); *Restatement (Second) of Torts*, § 543, cmt. f (1977).[5] A description need not be by words to create an express warranty. "Technical specifications, blueprints and the like can afford more exact description than mere language and if made part of the basis of the bargain goods must conform with them." Va. Code § 8.2-313, Official Comment 6.

The evidence presented at trial showed that the Plaintiff's representative, Bennett, forwarded to the Defendant the specification sheet along with the proposed sales price and confirmed that the printer would print 6 x 9 envelopes. It was further established that Bennett described the printer as an "envelope printer." Because these representations played a part in CPSI's decision to purchase the printer, this Court finds that an express warranty was created.

This Court holds that an express warranty can be created by a seller through the introduction of a manufacturer's specification sheet into the bargaining process. Although there is no Virginia case directly addressing this issue, other courts have reached a similar conclusion. *See Autzen v. John C. Taylor Lbr. Sales, Inc.*, 572 P.2d 1322, 1324 (Or. 1977) (The court noted the distinction between the language of section (1)(a) of UCC § 2-313 which provides that "[a]ny affirmation of fact or promise *made*

---

[5] In *Daughtrey v. Ashe, supra,* statements made by the seller as to the grade of diamonds sold were held to be an express warranty, because the seller gave "more than a mere opinion of the value of the goods by specifically describing them as diamonds of 'H' color and v.v.s. quality." *Id.* at 77. The court held that since the seller failed to introduce any facts which would take his affirmations of the quality of the diamonds out of the agreement, it was part of the basis of the bargain. *Id.* at 80.

*by the seller to the buyer* . . . creates an express warranty" and section (1)(b) which provides that "any description of the goods which is made part of the basis of the bargain creates an express warranty" and thus held that the introduction into the bargaining process of a survey prepared by one other than the seller, created an express warranty.); *Antonucci v. Stevens Dodge*, 73 Misc. 2d 173, 340 N.Y.S.2d 979 (1973) (A car dealer was held liable for breach of an express warranty under UCC § 2-313 where the dealer introduced into the sale of a truck a Chrysler booklet.); *Slyman v. Pickwick Farms*, 472 N.E.2d 380, 384 (Ohio 1984) ("As far as the origin of the statement is concerned, regardless of the fact that the description was formulated by a third party, and not by the seller, the statement may still be found to be part of the basis of the bargain and, therefore, constitutes an express warranty."); *Hillcrest Country Club v. N. D. Judds Co.*, 461 N.W.2d 55 (Neb. 1990) ("While it has been held that a seller does not adopt a manufacturer's express warranty merely by giving notice of that warranty . . . adoption does arise where a seller makes an affirmation about the manufacturer's warranty by means of a statement of fact, a promise, or some action which would tend to induce the buyer to purchase the goods."). Thus, this Court finds that an express warranty was created by the plaintiff ICN, both by the introduction into the sale of the specification sheet, and by affirmations made to the buyer that the machine would work according to the specifications. This Court also finds that the express warranty was breached when the printer was unable, after a number of attempts at repair, to print 6 x 9 envelopes.

## B. *Implied Warranty of Fitness for a Particular Purpose*

This Court further finds that an implied warranty of fitness for a particular purpose was created in the sale of the printer. Va. Code § 8.2-315. To recover under this section, the buyer must prove that (1) the seller had reason to know the particular purpose for which the buyer required the goods, (2) the seller had reason to know the buyer was relying on the seller's skill or judgment to furnish appropriate goods, and (3) the buyer in fact relied upon the seller's skill or judgment. *Medcom, Inc. v. C. Arthur Weaver Co.*, 232 Va. 80 (1986). The evidence presented at trial showed that the seller was aware that the Plaintiff was looking for a printer specifically for the purpose of printing 6 x 9 envelopes. Although it was the buyer who first mentioned the Kentek K-30 printer, this Court also finds that the seller knew that the Defendant was relying upon their representations after investigation of the product, and that the Defendant did in fact

rely upon these representations. Again, when the printer failed to print 6 x 9 envelopes this warranty was breached. Because of the ruling that ICN breached both an express warranty and a warranty of fitness for a particular purpose, this Court need not reach the issue of whether ICN also breached an implied warranty of merchantability.

## C. *Damages*

In its counterclaim Defendant prays for damages for breach of warranty, including a claim for incidental and consequential damages. Va. Code § 8.2-714 sets out the measure of a buyer's damages in regard to accepted goods. This section states, in part:

> (2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

In proving damages for breach of warranty in the sale of goods "that can be bought and sold on the open market," a party must present evidence of the fair market value at the time and place of acceptance of the goods accepted and of the value they would have had if they had been "as warranted." The difference in these two valuations is the measure of damages. *Wharton, Aldhizer & Weaver v. Savin Corp.*, 232 Va. 375, 377 (1986). Fair market value is defined as "the price the goods would bring if they were offered for sale by one who desires, but is not obliged to sell, and were bought by one who desires, but is under no necessity of having them." *Id.* at 277, n. 2, *citing Fruit Growers v. Alexandria*, 216 Va. 602 (1976). As to the value of the goods if they had been "as warranted," evidence of the purchase price of the goods is persuasive, but not conclusive. *Id.* at n. 3.

The party seeking an award of damages bears the burden of proof on the issue, and in the absence of evidence, damages will not be awarded. *Twin Lakes Mfg. Co. v. Coffey*, 222 Va. 476 (1981); *Holz v. Coates Motor Co.*, 206 Va. 894 (1966). The evidence presented at trial failed to establish evidence of such damages under Va. Code § 8.2-714, and thus this Court is unable to enter such an award for breach of warranty.

Defendant also asks this Court for incidental damages in the amount of $29,550.00. This figure was derived by calculating a monthly net profit

which was expected from the use of the printer, less costs and profits from incidental flat sheet work. Va. Code § 8.2-714(c) provides that "[i]n a proper case any incidental and consequential damages under the next section [8.2-715] may also be recovered." That section provides:

(1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach;

(2) Consequential damages resulting from the seller's breach include:

(a) Any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

(b) Injury to person or property proximately resulting from any breach of warranty.

Va. Code § 8.2-715.

Plaintiff on the other hand argues that the Court should not award consequential damages because the buyer has failed to act in a positive and assertive manner to diminish the loss potential, *citing Cancun Adventure Tours, Inc. v. Underwater Design Co.*, 862 F.2d 1044 (4th Cir. 1988). Plaintiff also argues that to be recoverable, consequential damages must be reasonably foreseen, and the buyer must prove them with reasonable certainty, *citing Duggin v. Williams*, 233 Va. 25, 353 S.E.2d 721 (1987).

This Court need not reach the issue of foreseeability because the evidence presented at trial failed to establish that the loss of profits suffered by CPSI resulted from the malfunctioning of the printer. *See* Va. Code § 8.2-715, Official Comment # 4. It is not disputed that in February 1993, Defendant had entered into an oral contract with a company called Pracon to print and stuff a newsletter for one of Pracon's customers. CPSI contends that Pracon terminated the contract solely because of CPSI's failure to timely produce as a result of the failure of the Kentek printer. In support of that contention, CPSI called Howard Holt as a witness. Holt had worked for Pracon in February 1993. Initially, Holt did not recollect the problem with CPSI. However, he subsequently testified that there were times that CPSI had been late in making the deliveries to Pracon. He

testified that he did not know of any reason CPSI would not have kept Pracon's business for this Pracon customer but for this problem. On cross-examination, he stated that he would not have "pulled" the contract after only one month's late delivery; it would have to have been two or three times. Holt's testimony cannot be reconciled with CPSI President Richard Geske's claim that Pracon terminated the contract with CPSI after the very first month. CPSI's evidence does not establish by a preponderance of the evidence that the termination of CPSI's oral contract with Pracon was caused by ICN's breach of warranty. Consequently, CPSI is not entitled to a recovery of allegedly consequential damages.

## IV. *Conclusion*

Although the Court finds that Plaintiff ICN breached both an express and implied warranty of fitness for a particular purpose, no damages have been satisfactorily established by the Defendant. Accordingly, the Court enters judgment for the Plaintiff in the amount of $10,191.81 plus costs. Under the factual circumstances of this case, the Court denies Plaintiff's request for prejudgment interest under § 8.01-382 of the Code.