Jarvis **FENDER**, Appellant,

v.

**GENERAL ELECTRIC COMPANY, Inc.,**
**Asheville Steel and Salvage Company**
**and Hartford Accident and Indemnity**
**Co., Appellees.**

No. 11154.

United States Court of Appeals
Fourth Circuit.

Argued May 3, 1967.

Decided May 31, 1967.

Thomas E. L. Lipsey, Asheville, N. C. (Bruce B. Briggs and Riddle & Briggs, Asheville, N. C., on brief), for appellant.

Harry DuMont, Asheville, N. C., Uzzell & DuMont, Asheville, N. C., on brief), for appellee General Electric Co., Inc.

---

William C. Morris, Jr., Asheville, N. C., for appellees Asheville Steel and Salvage Co. and Hartford Accident and Indemnity Co.

Before SOBELOFF, BOREMAN and BRYAN, Circuit Judges.

ALBERT V. BRYAN, Circuit Judge:

An action by Jarvis Fender against the General Electric Company, Inc. to recover damages for personal injuries, said to have been caused by the negligence of an alleged employee of GE, was dismissed by the District Court as barred by the North Carolina Workmen's Compensation Act, N.C.G.S. §§ 97–9 through 97–10.1 [1]. The dismissal was based on the finding that this employee and the plaintiff were the servants of the same employer, one other than GE [2]. On plaintiff's appeal, we sustain the dismissal, doing so because of his refusal to point to any evidence in his possession to prove the negligent person was GE's servant.

The complaint, filed in the State court on March 18, 1965 and properly removed to the Federal district court, alleges that on March 24, 1964 Fender was employed by Asheville Steel and Salvage Company of Asheville, North Carolina to assist in the erection by his employer of steel beams in GE's plant in Henderson County, North Carolina; that on this day one Arnold Bryson was employed by GE as a welder; and that while Bryson was operating a welding machine he carelessly allowed an uninsulated electric cable to touch a steel cable securing a beam, and thus negligently caused the beam to fall upon Fender; and that GE was not only imputable with Bryson's negligence but was itself directly negligent in supplying Bryson with defective equipment while in its employ.

Among other defenses the answer of GE denied that Bryson was its employee but rather was employed by Salvage, also the employer of Fender. It further pleaded that both Salvage and Fender had accepted the North Carolina Workmen's Compensation Act, and that by its terms Fender had no right of action for injuries inflicted by the negligence of a co-employee, such as Bryson. Footnote 1, supra.

A third-party complaint was filed by GE against Salvage and the Hartford Accident and Indemnity Company. It referred to the contract between GE and Salvage, and particularly adverted to the clause wherein Salvage covenanted to save GE harmless and indemnify it for loss by reason of injury from any act or omission of Salvage's employees. Hartford insured against this possibility.

On August 31, 1965 the case was pretried. In the order thereon a preliminary and foremost issue for resolution was noted of whether Arnold Bryson was an employee of Salvage and not of GE. It was further recited that both GE and Salvage agreed that their evidence would show that Bryson at the time of Fender's injury was Salvage's and not GE's employee. Plaintiff noted no objection to the order. The case was then set for a jury trial at the next term, which meant July 20, 1966.

The day before trial, on July 19, 1966 GE, Salvage and Hartford filed motions for summary judgment based on their contention that Bryson was an employee of Salvage and not of GE. Affidavits filed of Bryson and others supported the

---

1. "§ 97–9. Employer to secure payment of compensation.—Every employer who accepts the compensation provisions of this article * * * shall only be liable to any employee who elects to come under this article for personal injury or death by accident to the extent and in the manner herein specified.

"§ 97–10.1. Other rights and remedies against employer excluded.—If the employee and the employer are subject to and have accepted and complied with the provisions of this article, then the rights and remedies herein granted to the employee, his dependents, next of kin, or personal representative shall exclude all other rights and remedies of the employee, his dependents, next of kin, or representative as against the employer at common law or otherwise on account of such injury or death."

2. See, post, Burgess v. Gibbs, 262 N.C. 462, 137 S.E.2d 806 (1964), so construing the Act.

**152**

motions. On the trial date, the Court directed the withdrawal of the jury while it heard the case on the issue of whether any right of action existed in Fender.

In answer to the inquiry of the Court, counsel for Fender stated that he did not desire to adduce evidence at that time to establish that Bryson was an employee of GE. He objected to the hearing of this issue except before the jury. He also objected to defendants' putting their witnesses on the stand. These points were overruled and the Court proceeded to take the testimony, in the absence of the jury, offered by Salvage and GE on the question. The next day the District Judge filed findings of fact, conclusions of law and an opinion holding that the Court would sustain the summary motions. No order of dismissal was entered until October 31, 1966.

■ While the procedure on trial date, July 20, 1966, is quite confusing, and has been most difficult to follow by reason of the District Judge's failure to clearly define his procedural steps, we affirm on the ground that summary judgment was justified.

Both pretrial order and pleadings made plain that the nature of Bryson's employment was to be litigated on the trial date. Indeed, it was specified as a paramount issue. We think this correct for two reasons. First, to make GE derivatively liable for Bryson's acts it was necessary to prove him its servant or employee. Second, were Bryson in fact the co-employee with plaintiff of Salvage, § 97–9 of the Act would put his remedy exclusively with the State Industrial Commission. Footnote 1, supra; Burgess v. Gibbs, 262 N.C. 462, 137 S.E.2d 806 (1964).

■ Necessarily, to succeed at trial plaintiff would on that date have had to present the witnesses and documents upon which he relied to prove the alleged employment by GE. Contrary to his protestation then and here, no material surprise was occasioned him by defendants' tardy motions. Nevertheless, he refused to present affidavit or evidence to contradict defendants' proof which was adduced in two forms. It was tendered through affidavits as provided in Rule 56, F.R.Civ.P. Also, oral testimony was offered as allowed by Rule 43(e), to prove the narrow point involved. 6 Moore's Federal Practice Para. 56.11[8] (1965). Plaintiff declined even to cross-examine. Nor did he request time to obtain opposing affidavits, despite the postponement for several months of the actual dismissal. Still on appeal, although asked, he points to no facts controverting the decision below.

Thus, if error there was because the hearing came before counter-affidavits were technically due, it was harmless, and we decline to reverse on the sheerest speculation. The following passage from Oppenheimer v. Morton Hotel Corporation, 324 F.2d 766, 767–768 (6 Cir. 1963) is pertinent:

"One of the assignments of error is that the motion was heard immediately instead of allowing the plaintiffs-appellants ten days before the hearing as provided by Rule 56(c) of the Federal Rules of Civil Procedure. A case may be decided on a motion for summary judgment when there is no genuine issue as to any material fact. When a case is in such a posture only a question of law is presented. The essential facts as they appear in the record are undisputed. At the hearing of the motion for summary judgment the trial judge asked counsel if he had any further evidence to submit and he replied in the negative. There is no claim now on this appeal that counsel had further evidence to submit. The trial judge decided as a matter of law that considering the pleadings, depositions, admissions and affidavits in the record the plaintiffs-appellants were not entitled to judgment. It would be a useless procedure to reverse the District Court because it did not allow ten days to elapse from the time the motion was filed until it was heard, if only a substantive law question is involved."

We conclude that substantial justice was done.

Affirmed.