Present:  All the Justices

NAJLA ASSOCIATES, INC.

                      OPINION BY JUSTICE LEROY R. HASSELL, SR.

v.   Record No. 960604         January 10, 1997

WILLIAM L. GRIFFITH & COMPANY OF VIRGINIA, INC.

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Gerald Bruce Lee, Judge

The dispositive issue in this appeal is whether a corporate plaintiff that recovered consequential damages for breach of contract presented sufficient evidence that those damages were within the contemplation of the contracting parties at the time they executed the contract.

NAJLA Associates, Inc., a District of Columbia corporation, executed a contract with William L. Griffith & Company of Virginia, Inc., a general contractor, to construct a shopping center known as Willow Run.  David W. Peacock, president of Griffith, learned that NAJLA intended to finance the construction without a loan from an institutional lender.  Griffith and its bonding company were concerned about this financial arrangement because, if NAJLA experienced financial problems, Griffith might not be paid for its work and materials.

Therefore, Griffith and NAJLA executed an escrow agreement creating an identifiable source of money to secure NAJLA's payment obligations to Griffith under the terms of the construction contract.  The escrow agreement required NAJLA to maintain an escrow account in the amount of $130,000 from which Griffith could obtain payments if NAJLA

failed to pay timely any construction progress payment. Generally, NAJLA was required to make prompt reimbursement to the escrow account for any sum paid to Griffith from that account.

Griffith submitted payment applications totaling $103,262 to NAJLA toward the end of the completion of construction which NAJLA refused to pay because of its claim that Griffith was not entitled to that full amount. Unknown to Griffith, the escrow agent paid this sum to Griffith from the escrow account, and when Griffith learned the escrow agent had done so, Griffith demanded that NAJLA reimburse the escrow account. NAJLA refused to reimburse the account. Thereafter, Griffith commenced an arbitration proceeding against NAJLA under the provisions of the construction contract to recover the full amount of its payment applications. The arbitrator awarded Griffith damages, and the trial court entered judgment on the arbitrator's award.

Subsequently, Griffith initiated this action by filing a motion for judgment seeking recovery of damages against NAJLA and others.[*] Griffith alleged that it suffered damages because of NAJLA's breach of the escrow agreement,

---

[*]Griffith also named as defendants: Samir Qreitem, president of NAJLA; John F. Pitrelli and Hugh Cregger, Jr., lawyers allegedly involved in the management or establishment of the escrow account; Eskovitz, Lazans, Pitrelli & Cregger, a law firm that allegedly managed and controlled the remaining defendant, E.L.P. Title & Escrow Co. The jury returned a verdict in favor of Griffith against these defendants, and Griffith's claims against these defendants were ultimately settled.

as distinguished from damages for breach of the construction contract.

Griffith presented the following evidence at trial in support of its claim for damages. Generally, project developers, including NAJLA, require that general contractors, such as Griffith, acquire performance and payment bonds as a condition of obtaining construction contracts. Griffith obtained its performance and payment bonds from the Aetna Casualty and Surety Company.

Aetna established a "work program" for Griffith in the total amount of $2,500,000. The "work program" is the total volume of bonded business that a bonding company permits a contractor to perform. Aetna would not provide any bonds for Griffith for new projects if Griffith's work in progress exceeded $2,500,000.

Aetna evaluated Griffith's capital, including its liquid assets, to establish the amount of Griffith's "work program." Certain accounts receivable were deemed liquid assets and, thus, were included in Griffith's capital base. Accounts receivable that were disputed or outstanding for more than 90 days were excluded from consideration of Griffith's capital base. Thus, Aetna did not consider the account receivable that NAJLA owed to Griffith, approximately $100,000, as a part of Griffith's liquid assets, and Griffith's "work program" was reduced by $1,000,000.

Peacock testified that Griffith lost profits during its

dispute with NAJLA because Griffith was unable to submit bids on certain projects due to its reduced "work program." Griffith also presented evidence that it incurred damages because certain subcontractors, who had performed work for it before the Willow Run project, were no longer willing to work for Griffith because it was delinquent in paying them for their work on that project. Peacock testified that in the future, Griffith would have to use subcontractors who were more expensive than its former subcontractors. Peacock also testified that Griffith incurred damages because its dispute with NAJLA caused Griffith to experience "cash flow" problems.

NAJLA moved to strike Griffith's evidence, asserting, among other things, that its purported damages were not reasonably contemplated at the time Griffith and NAJLA executed the escrow agreement. The trial court denied the motion and submitted the case to the jury which returned a verdict in favor of Griffith against NAJLA in the amount of $175,000. The trial court entered a judgment confirming the jury's verdict, and we awarded NAJLA an appeal.

NAJLA asserts that Griffith's damages were not reasonably foreseeable at the time the escrow agreement was executed and, therefore, are not recoverable as a matter of law. Griffith argues that NAJLA understood the importance of Griffith's relationship with its bonding company and that "the manipulation of the escrow account would significantly impair that relationship to Griffith's detriment." We agree

with NAJLA.

In <u>Roanoke Hospital</u> v. <u>Doyle and Russell</u>, 215 Va. 796, 801, 214 S.E.2d 155, 160 (1975), we stated the following principles which are pertinent here:

> "There are two broad categories of damages <u>ex contractu</u>:  direct (or general) damages and consequential (or special) damages.  <u>Washington & Old Dominion R.R. Co.</u> v. <u>Westinghouse Co.</u>, 120 Va. 620, 627, 89 S.E. 131, 133 (1916).  <u>See also</u> <u>Sinclair</u> v. <u>Hamilton & Dotson</u>, 164 Va. 203, 209, 178 S.E. 777, 779 (1935).  Direct damages are those which arise 'naturally' or 'ordinarily' from a breach of contract; they are damages which, in the ordinary course of human experience, can be expected to result from a breach.  Consequential damages are those which arise from the intervention of 'special circumstances' not ordinarily predictable.  If damages are determined to be direct, they are compensable.  If damages are determined to be consequential, they are compensable only if it is determined that the special circumstances were within the 'contemplation' of both contracting parties. Whether damages are direct or consequential is a question of law.  Whether special circumstances were within the contemplation of the parties is a question of fact."

<u>Accord</u> <u>Duggin</u> v. <u>Williams</u>, 233 Va. 25, 29-30, 353 S.E.2d 721, 723-24 (1987).

Here, Griffith's purported damages are consequential and, therefore, Griffith was required to prove that its purported damages were within the contemplation of both contracting parties at the time they executed the escrow agreement.  Griffith presented no evidence which would permit the jury to find that when the contracting parties signed the escrow agreement, they contemplated that had NAJLA breached that agreement, such breach would have restricted Griffith's "work program," thereby preventing

Griffith from bidding on projects.  Griffith did not present any evidence that NAJLA was even aware of Griffith's "work program" when the escrow agreement was executed.

Likewise, Griffith presented no evidence that either party to the contract contemplated that Griffith's future costs for subcontractors would increase as a result of NAJLA's breach of the escrow agreement.  Finally, Griffith failed to produce evidence that the parties contemplated at the time they signed the escrow agreement that NAJLA's breach of that agreement would cause Griffith to experience cash flow problems.

Accordingly, we will reverse the judgment of the trial court and enter final judgment here in favor of NAJLA.

<u>Reversed and final judgment</u>.