**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS

**FOR THE FOURTH CIRCUIT**

AMZURA ENTERPRISES,
INCORPORATED, d/b/a Amzco/Surgical
Devices, U.S.A.,

*Plaintiff-Appellee,*

v.

JAVAID A. RATCHER, an individual;
AFFILIATED INDUSTRIES,
INCORPORATED; FRANK FRANCOIS, an
individual,

*Defendants-Appellees,*

GLOBAL FINANCIAL CORPORATION,

*Intervenor-Appellant,*

and

STANLEY V. CAMPBELL; MARK
FOWLER; ROWE INCORPORATED;
ANDERSON FUNDING GROUP,

*Defendants.*

No. 97-2697

AMZURA ENTERPRISES,
INCORPORATED, d/b/a Amzco/Surgical
Devices, U.S.A.,
              *Plaintiff-Appellee,*

                    v.

STANLEY V. CAMPBELL; ROWE
INCORPORATED,
              *Defendants-Appellants,*

JAVAID A. RATCHER, an individual;
AFFILIATED INDUSTRIES,
INCORPORATED; FRANK FRANCOIS, an
individual,                                    No. 97-2698
              *Defendants-Appellees,*

                   and

MARK FOWLER; ANDERSON FUNDING
GROUP,
              *Defendants,*

GLOBAL FINANCIAL CORPORATION,
              *Intervenor-Defendant.*

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-96-1601-A, CA-97-956-A)

Argued: October 27, 1999

Decided: September 7, 2001

Before LUTTIG, WILLIAMS, and KING, Circuit Judges.

Affirmed in part, reversed in part, and remanded by unpublished per
curiam opinion.

## COUNSEL

**ARGUED:** Timothy Brian Mills, PATTON BOGGS, L.L.P., Washington, D.C., for Appellant. Walter Elmer Diercks, RUBIN, WINSTON, DIERCKS, HARRIS & COOKE, L.L.P., Washington, D.C., for Appellees. **ON BRIEF:** William E. Slade, Carol L. Hoshall, PATTON BOGGS, L.L.P., Washington, D.C., for Appellant. Frederick D. Cooke, Jr., RUBIN, WINSTON, DIERCKS, HARRIS & COOKE, L.L.P., Washington, D.C., for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

This appeal requires us to determine whether a notice of appeal signed by a corporate officer on behalf of the corporation is defective; whether the district court erred on the first day of trial by inviting and granting the oral summary judgment motion of AMZURA Enterprises, Incorporated (AMZURA), doing business as AMZCO/Surgical Devices, U.S.A. (AMZCO), on the state law claims of Rowe, Incorporated (Rowe), its president, Stanley V. Campbell (Campbell), and Global Financial Corporation (Global); and whether, as a matter of law and under the facts presented, consequential damages may not be recovered. We conclude that although Campbell signed the notice of appeal on behalf of Rowe, Rowe's notice of appeal was not jurisdictionally defective. We also conclude that the district court did not commit reversible error in granting AMZCO's oral motion for summary judgment as to Rowe, Campbell, and Global's fraud claims with less than ten-days notice. However, we remand Rowe, Campbell, and Global's other state law claims for further proceedings consistent with this opinion because the record before us is unclear as to whether there is a triable issue of fact as to those claims. Finally, we reverse the district court's conclusion that, as a matter of law, consequential

damages may not be recovered for AMZCO's breach of the financing agreement.

## I.

In February 1996, the United States Small Business Administration (the Government) awarded a subcontract (the Army Contract) to Rowe under which Rowe would lease twenty-nine medical vehicles to the Army for a one-year term, with four one-year options to extend the lease. The Army Contract called for Rowe to receive $310,808.08 for the first year of the lease and a total of $1,554,040.40 if the Army exercised all four of its one-year options. In order to perform the Army Contract — which required Rowe to purchase parts, vehicles, and other equipment — Rowe sought financing from AMZCO. By a letter agreement dated July 19, 1996 (the July 19 agreement) and an amendment dated July 26, 1996 (the July 26 amendment), AMZCO agreed to finance Rowe for "up to $1 million." (J.A. at 287, 290.) In exchange, AMZCO received an assignment of revenues due Rowe under the Army Contract, as well as a security interest in the vehicles, to secure Rowe's indebtedness to AMZCO. Under the agreement, MashreqBank was designated to provide funds for AMZCO. The July 19 agreement was signed by Javaid Ratcher, AMZCO's president, on behalf of AMZCO and by Campbell on behalf of Rowe. Neither Campbell nor Ratcher signed the agreement in his individual capacity. Similarly, Campbell signed the July 26 amendment on behalf of Rowe. As part of the financing arrangement, Rowe asked Frank Francois, president of Affiliated Industries, to coordinate AMZCO's purchase of ten of the medical vehicles on behalf of Rowe. AMZCO titled these ten vehicles in its own name. After providing funding in the amount of $470,696.56, AMZCO sought to impose additional conditions on its financing agreement with Rowe before providing further funding for the medical vehicles. Because of the lack of financing, several creditors threatened to sue Rowe. At least one creditor, Richmond Motor Company, did file suit against Rowe. Rowe notified AMZCO of the pending suit, but AMZCO did not pay the amounts due to Richmond Motor Company or other creditors.

On or about September 9, 1996, Rowe sought alternative financing and engaged in a purchase agreement with Anderson Funding Group (Anderson), under which Rowe conveyed all of its rights in the medi-

cal vehicles to Anderson.[1] Anderson then assigned all of its rights to Global. Global agreed to provide the necessary financing, and Rowe assigned Global the right to receive all of Rowe's revenues under the Army Contract. After Global began to finance Rowe, Rowe filed a notice of release with the Government and MashreqBank advising them to assign the proceeds of the Army Contract to Global, rather than to AMZCO. Campbell spoke with Francois and Ratcher and informed them of Rowe's new arrangement with Global. Believing that AMZCO had agreed to transfer title of the ten vehicles to Rowe in exchange for repayment of the funds that AMZCO had already financed, Global paid $470,696.56 to AMZCO on behalf of Rowe. AMZCO deposited the money but refused to transfer title of the ten vehicles. AMZCO claimed that it owned the vehicles because it had purchased them.

On November 6, 1996, AMZCO filed suit in the Eastern District of Virginia, asserting diversity jurisdiction and alleging that Campbell and Rowe had breached their financing agreement. AMZCO asserted claims of fraud, breach of contract, and intentional interference with its business relationship with the Government and MashreqBank. AMZCO also sought punitive damages. On December 9, 1996, counsel for Campbell and Rowe filed an answer and counterclaim seeking damages for breach of contract. Rowe and Campbell also requested a declaratory judgment that Rowe owned the ten medical vehicles.

On May 2, 1997, the district court granted a motion by Campbell and Rowe's counsel to withdraw from the case, leaving Campbell and Rowe to proceed *pro se*.[2] On June 18, 1997, Global filed suit to pro-

---

[1]Anderson and its president, Mark Fowler, were originally parties to this suit, but both were dismissed from this action and are not parties on appeal.

[2]Although the district court considered and granted the motion by Rowe and Campbell's counsel to withdraw, we find nothing in the record to suggest that the district court considered the issue of whether Rowe, as a corporation, was capable of proceeding *pro se*. Moreover, there is no evidence in the record that Campbell is a licensed attorney admitted to practice in the Eastern District of Virginia or the Fourth Circuit. Nevertheless, no issue was raised as to the effect on the district court's judgment of Rowe's participation in the district court without counsel. On remand Rowe may only proceed with licensed counsel.

tect its interest in the ten medical vehicles, asserting claims of detinue and unjust enrichment (against AMZCO and Ratcher), trover, unlawful conversion, fraud in the inducement and breach of contract (against AMZCO, Ratcher, Francois, and Affiliated) (collectively, Global's state law claims). Global requested declaratory relief, as well as compensatory and punitive damages. The district court granted Global's motion to consolidate its case with the pending suit between AMZCO and Rowe and Campbell.

Global filed a motion for partial summary judgment against AMZCO and Ratcher on its detinue and unjust enrichment counts, and against AMZCO, Ratcher, Francois, and Affiliated on its trover/unlawful conversion counts. Global argued that there was no genuine issue of material fact regarding its claim that AMZCO had no right to retain title to the ten medical vehicles and that Rowe's repayment of the money discharged Rowe's obligations to AMZCO. Rowe and Campbell, acting *pro se*, filed a motion for summary judgment against AMZCO on all counts of AMZCO's complaint and in favor of their own breach-of-contract counterclaim, arguing that AMZCO breached its contract by failing to provide the full amount of financing. AMZCO did not file its own motion for summary judgment but did submit memoranda of law, along with various attachments, exhibits, and affidavits, in opposition to the motions filed by Rowe, Campbell, and Global.

After Rowe, Campbell, and Global filed their motions for summary judgment, AMZCO filed a first amended complaint, which added a constructive fraud claim against Rowe and Campbell. Rowe and Campbell then filed an amended answer and counterclaims that asserted counts of trover and unlawful conversion; fraud in inducement and breach of contract to convey title; unjust enrichment; and tortious interference with contracts and business relationships (collectively, Rowe and Campbell's state tort law claims) against AMZCO. Campbell signed the amended answer and counterclaims "Individually and As President Of Rowe Incorporated." (J.A. at 127R.)[3] On the

---

[3]Rowe and Campbell's motion for summary judgment and their amended answer and counterclaims were apparently prepared by former counsel before he withdrew from the case. We do not know whether Campbell modified these documents prior to filing them.

same day, Global responded to AMZCO's amended complaint with its own answer and also filed a motion to dismiss AMZCO's fraud and constructive fraud counts for failure to plead with particularity. AMZCO did not file any summary judgment motions against Rowe, Campbell, or Global.

The parties convened for trial as scheduled on September 8, 1997. On the first day, the district court heard arguments on the previously filed summary judgment motions, as well as Global's new motion to dismiss. The district court dismissed AMZCO's fraud and constructive fraud counts, and also granted partial summary judgment in favor of Rowe, Campbell, and Global on the breach-of-contract issue. The district court found that AMZCO breached its contract to provide financing and that AMZCO was not entitled to any of the medical vehicles. The district court ordered AMZCO to transfer title of the vehicles to Global. The district court also concluded that Campbell and Rowe could not recover consequential damages resulting from AMZCO's breach of contract because, as a matter of law, those damages were not foreseeable. It also held that AMZCO had no valid claims against Rowe, Campbell, or Global.

At the hearing, the district court invited AMZCO to move orally for summary judgment against Global, Campbell, and Rowe on their state tort law claims. After brief argument, the district court granted AMZCO's oral motion for summary judgment. Neither Campbell nor Rowe, who each were proceeding *pro se*, objected to the district court's action. Global, which was represented by counsel, also did not object. On October 24, 1997, the district court issued its final written order disposing of the entire case.[4]

On November 21, 1997, AMZCO filed its notice of appeal as to the district court's ruling on Rowe and Campbell's breach-of-contract counterclaim.[5] On November 24, 1997, Global filed its notice of appeal and on December 3, 1997, Campbell and Rowe filed a joint notice of appeal, which was signed only by Campbell "*Pro se* and for Rowe,

---

[4]The district court specifically mentioned only Rowe, Campbell, and Global's "fraud" claims in its final order.

[5]AMZCO later voluntarily withdrew its appeal.

Inc." (J.A. at 284.) On June 2, 1998, Global's trial counsel entered an appearance on behalf of Campbell and Rowe. Since that time, Global's trial counsel has filed joint briefs on behalf of Rowe, Campbell, and Global, and has represented them jointly in this appeal.

Rowe, Campbell, and Global raise several issues on appeal. First, they argue that the district court erred by inviting and granting AMZCO's oral summary judgment motion against their state tort law claims because the district court did not give them adequate notice or an opportunity to respond. Second, Rowe and Campbell contend that the district court erred in concluding, as a matter of law, that Rowe and Campbell could not recover consequential damages for AMZCO's breach of contract because, they argue, foreseeability is a question of fact for the jury.

At oral argument, AMZCO questioned for the first time whether we lack jurisdiction to hear Rowe's appeal because licensed counsel did not sign its notice of appeal. At our request, the parties filed supplemental briefs on this issue. In conjunction with its supplemental brief, Rowe also filed a motion for leave to file its notice of appeal out of time. We must address questions of subject matter jurisdiction first "'because they concern the court's very power to hear the case.'" *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 442 n.4 (4th Cir. 1999) (quoting 2 James Wm. Moore et al., *Moore's Federal Practice* § 12.30[1] (3d ed. 1998)). Moreover, "the absence of jurisdiction may be raised at any time during the case, and may be based on the court's review of the evidence." *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). Therefore, we begin by considering whether we have jurisdiction to hear Rowe's appeal.

II.

AMZCO argues that the notice of appeal, signed by a *pro se* litigant on behalf of the corporation for which he is president rather than by licensed counsel, is invalid to bring the corporation's appeal within our jurisdiction. Reviewing this question of subject matter jurisdiction de novo, *see Tillman v. Resolution Trust Corp.*, 37 F.3d 1032, 1034 (4th Cir. 1994) (reviewing de novo a dismissal based upon lack of subject matter jurisdiction), we conclude that we have jurisdiction over Rowe's timely noted appeal because although Rowe's original

notice of appeal was technically defective for lack of a proper signature, Rowe remedied that defect by filing a corrected notice of appeal. *See Becker v. Montgomery*, No. 00-6374, 2001 WL 567709 (U.S. May 29, 2001) (stating that although Becker's notice of appeal was defective because it lacked a proper signature, the Court of Appeals for the Sixth Circuit erred in refusing to accept Becker's corrected notice of appeal).

In *Becker*, the Supreme Court addressed the question of whether, "[w]hen a party files a timely notice of appeal in district court, . . . the failure to sign the notice of appeal require[s] the court of appeals to dismiss the appeal." *Id.* at *3 (internal quotation marks omitted). Becker, a *pro se* inmate, had timely filed a notice of appeal in which he had typewritten, but did not hand sign, his own name. *Id.* The Court of Appeals for the Sixth Circuit dismissed Becker's appeal on the ground that Becker's failure to sign his notice of appeal was jurisdictional "and therefore not curable outside the time allowed to file the notice." *Id.* The Supreme Court agreed that Becker's notice of appeal was defective due to the lack of his signature, but it disagreed with the Sixth Circuit's conclusion that Becker could not cure the defect by filing a corrected notice of appeal after expiration of the appeal period. *Id.* at *5-6.

The Court reasoned that Federal Rule of Civil Procedure 11 governed the signature requirement for the notice of appeal.[6] Federal Rule of Civil Procedure 11 provides, in pertinent part,

> (a) Signature. Every pleading, written motion, and other paper shall be signed by at least one attorney of record in the attorney's individual name, or, if the party is not represented by an attorney, shall be signed by the party. Each paper shall state the signer's address and telephone number, if any. Except when otherwise specifically provided by rule

---

[6]In *Covington v. Allsbrook*, 636 F.2d 63 (4th Cir. 1980), we concluded that Federal Rule of Civil Procedure 11 does not apply to notices of appeal. *See id.* at 64 n.2. To the extent that our decision in *Covington* is inconsistent with the Supreme Court's decision in *Becker v. Montgomery*, No. 00-6374, 2001 WL 567709 (May 29, 2001), *Becker*, of course, controls.

or statute, pleadings need not be verified or accompanied by affidavit. An unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party.

Fed. R. Civ. P. 11(a). The Court noted that although Becker typed his name and although the Civil Rules now recognize certain technological advances, such as electronic filing, "[a]s Rule 11(a) is now framed, we read the requirement of a signature to indicate, as a signature requirement commonly does, and as it did in John Hancock's day, a name handwritten (or a mark handplaced)." *Id.* at *5.

The Court stated, however, that "[a]s plainly as Civil Rule 11(a) requires a signature on filed papers, . . . so the rule goes on to provide in its final sentence that 'omission of the signature' may be 'corrected promptly after being called to the attention of the attorney or party.'" *Id.* at *5. Consequently, because Becker offered a corrected notice of appeal containing his signature, the Court ruled that his appeal should not have been dismissed: "We rule simply and only that Becker's lapse was curable as Civil Rule 11(a) prescribes; his initial omission was not a "jurisdictional" impediment to pursuit of his appeal." *Id.* at *6. In sum, the Court held that

> The governing Federal Rules direct that the notice of appeal, like other papers filed in district court, shall be signed by counsel or, if the party is unrepresented, by the party himself. But if the notice is timely filed and adequate in other respects, jurisdiction will vest in the court of appeals, where the case may proceed so long as the appellant promptly supplies the signature once the omission is called to his attention.

*Id.* at *3.

In the present case, Rowe timely filed a notice of appeal that was signed only by Campbell, a non-lawyer, on Rowe's behalf and not by licensed counsel. After AMZCO questioned the validity of Rowe's notice of appeal at oral argument on the basis that Rowe, as a corporation, could not sign its own notice of appeal and that Campbell, as a non-lawyer, was not authorized to sign the notice on Rowe's behalf,

Rowe promptly submitted a corrected notice of appeal signed by counsel.[7] Assuming, without deciding, that Campbell's signature on Rowe's initial notice of appeal was insufficient to satisfy Federal Rule of Civil Procedure 11's signature requirement, *Becker* mandates the conclusion that we nevertheless have jurisdiction over Rowe's appeal because Rowe promptly filed a corrected notice of appeal. *See Becker*, 2001 WL at *8 (concluding that the court of appeals erred in refusing to accept Becker's corrected notice of appeal).

### III.

Having concluded that we have jurisdiction to consider Rowe's appeal, we next address Rowe, Campbell, and Global's claims. Rowe, Campbell, and Global first argue that the district court erred in inviting and granting AMZCO's oral motion for summary judgment on their state law claims without giving them ten days' notice and any opportunity to respond. They also argue that the district court erred in concluding that there is no triable issue of fact as to their state law claims. With regard to Rowe, Campbell, and Global's assertion of procedural error, we conclude that the district court did not commit reversible error in failing to give ten-days notice before granting AMZCO's oral motion for summary judgment. With regard to the substance of Rowe, Campbell, and Global's state law claims, we conclude that Rowe, Campbell and Global failed to raise a triable issue of fact as to their fraud claims, and, therefore, we affirm the district court's grant of summary judgment as to those claims. Because the record before us is unclear as to whether there is a triable issue of fact as to Rowe, Campbell, and Global's other state law claims, however, we reverse and remand the district court's judgment for further proceedings consistent with this opinion. Finally, we conclude that the

---

[7]We heard oral argument on October 27, 1999, and requested supplemental briefing on the issue of the validity of Rowe's notice of appeal. On November 23, 1999, within the time allotted by us to file supplemental briefing, Rowe filed a motion for leave to file an amended notice of appeal, with an attached amended notice of appeal signed by counsel. We grant Rowe's motion and accept Rowe's amended notice of appeal. We note that licensed counsel filed Rowe's briefs and orally argued before us. At all times, AMZCO and this Court were well aware that both Campbell and Rowe were on appeal.

district court erred in ruling as a matter of law that consequential damages are not recoverable for AMZCO's breach of the financing agreement, and we reverse and remand the district court's judgment on that issue for further proceedings consistent with this opinion.

## A.

We turn first to Rowe, Campbell, and Global's claim of procedural error — that the district court erred by not affording them ten-days notice before granting AMZCO's oral motion for summary judgment. Federal Rule of Civil Procedure 56 requires a party to serve a summary judgment motion "at least 10 days before the time fixed for the hearing." Fed. R. Civ. P. 56(c). Rule 56, however, "does not provide for situations in which . . . the court desires to enter summary judgment sua sponte, or in which the nonmoving party, rather than the movant, is entitled to summary judgment, but no cross-motion has been made." 10A Charles Alan Wright et al., *Federal Practice & Procedure* § 2720 (3d ed. 1998). Although Rule 56 governs summary judgment motions made by the parties, it is clear that a district court may enter summary judgment *sua sponte* and that the principles of Rule 56 apply to the latter situation. *See United States Dev. Corp. v. Peoples Fed. Sav. & Loan Ass'n*, 873 F.2d 731, 735 (4th Cir. 1989). Thus, when the district court considers summary judgment *sua sponte*, it generally must give the nonmoving party sufficient notice and an opportunity to respond. *See id.* In *United States Development*, we addressed whether the district court erred by granting summary judgment *sua sponte* against the United States Development Corporation (USDC) on its newly added contract claim without giving USDC any notice or an opportunity to be heard. *See id.* In concluding that the district court erred, we noted that the district court's power to grant summary judgment *sua sponte*

> is contingent on giving the losing party notice that it must come forward and defend its claim. While this notice need not necessarily be a formal document, it should provide the full ten days called for by Fed. R. Civ. P. 56(c). The notice must be sufficient to provide the losing party with an adequate opportunity to demonstrate a genuine issue of material fact. And it must, in view of the procedural, legal, and factual complexities of the case, allow the party a reasonable

>       opportunity to present all material pertinent to the claims
>       under consideration.

*Id.* (internal citations omitted).[8]

Assuming that the ten-days-notice rule of *United States Development* applies to this case, we conclude that the district court's failure to give Rowe, Campbell, and Global ten-days notice was at most harmless error.[9] *See Fender v. General Elec. Co.*, 380 F.2d 150, 152

---

[8]We recognize that the ten-days-notice rule might not apply where the district court is already considering a properly noticed motion for summary judgment from the moving party and decides to enter summary judgment *sua sponte* in favor of the nonmovant on an issue identical to that which it is already considering, even absent a cross-motion, because "[t]he threat of procedural prejudice is greatly diminished if the court's *sua sponte* determination is based on issues identical to those raised by the moving party." *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 140 (2d Cir. 2000) (internal quotation marks and alteration omitted); *see Exxon Corp. v. St. Paul Fire & Marine Ins. Co.*, 129 F.3d 781, 786 (5th Cir. 1997) (noting that the district court, in essence, treated Exxon's opposition to St. Paul's motion for summary judgment as a cross-motion for summary judgment: "That Exxon did not file a proper motion for summary judgment does not preclude the district court in the instant action from granting summary judgment in its favor."). *But see Massey v. Congress Life Ins. Co.*, 116 F.3d 1414, 1417 (11th Cir. 1997) (stating that "[t]he notice provisions retain their mandatory character even when the district court contemplates awarding summary judgment *sua sponte* against a party that itself had moved for summary judgment").

In the present case, Rowe, Campbell, and Global moved for summary judgment as to several of their own claims, as well as AMZCO's claims, but they did not move for summary judgment as to their own fraud claims. As a result, the same claims were not at issue in AMZCO's oral motion for summary judgment and Rowe, Campbell, and Global's motions for summary judgment. For that reason, we need not address whether a district court may, in some circumstances, grant summary judgment *sua sponte* without notice in favor of a nonmovant where the moving party has filed a motion for summary judgment on an identical issue.

[9]This reasoning also applies to Rowe, Campbell, and Global's argument that the district court's grant of AMZCO's oral motion for summary judgment contravened Eastern District of Virginia Local R. 56(A) and the scheduling order entered in this case on July 18, 1997.

(4th Cir. 1967) (concluding that district court's consideration of summary judgment before counter-affidavits were due was harmless error because, among other reasons, there was "no material surprise," and Fender refused to present evidence or affidavit to contradict General Electric's proof); *see also Powell v. United States*, 849 F.2d 1576, 1580 (5th Cir. 1988) (applying a harmless-error analysis to a district court's grant of summary judgment *sua sponte* without ten-days notice); *Harrington v. Vandalia-Butler Bd. of Educ.*, 649 F.2d 434, 436-37 (6th Cir. 1981) (same). In *Oppenheimer v. Morton Hotel Corp.*, 324 F.2d 766, 767-68 (6th Cir. 1963) (per curiam), cited favorably by *Fender*, the Sixth Circuit concluded that the district court's grant of summary judgment without giving ten days' notice was not reversible error on the grounds that "the trial judge asked counsel if he had any further evidence to submit and he replied in the negative," *id.* at 767-68, that "[t]here is no claim now on this appeal that counsel had further evidence to submit," *id.* at 768, and that "it would be a useless procedure to reverse the District Court because it did not allow ten days to elapse from the time the motion was filed until it was heard," *id.* In the present case, just as in *Oppenheimer*, the district court asked Rowe, Campbell, and Global if they had any additional arguments or issues to raise in the case, and they did not object or request additional time to offer further evidence or argument. On appeal, Rowe, Campbell, and Global have not pointed to any additional evidence, beyond conclusory allegations, that they might have offered as to their fraud claims had the district court given them more time to respond.

The proceedings leading up to the district court's grant of AMZCO's motion for summary judgment further support our conclusion that the district court's failure to give Rowe, Campbell, and Global ten-days notice was at most harmless error. First, discovery was complete, Rowe, Campbell, and Global had filed several pleadings, and the parties had filed timely motions to dismiss and for summary judgment. Second, the parties were convened for trial when the district court invited AMZCO to move for summary judgment on Rowe, Campbell, and Global's fraud claims, and Rowe, Campbell, and Global should have been well-prepared to put forth a triable issue of fact in response to an oral motion for summary judgment. Third, the district court reminded the parties that it had previously expressed concern about the merits of Rowe, Campbell, and Global's fraud

claims. (*See* J.A. at 242-43 ("Now, we have got some other fraud allegations in this case that I have got some question about, as I indicated to you all when we talked informally. I don't have any motion from you-all in regard to some of these fraud claims, but I think we need to deal with them as well.").) Rowe, Campbell, and Global, therefore, should not have been surprised by the district court's action. Under these circumstances, the district court's failure to give Rowe, Campbell, and Global ten days' notice does not warrant reversing the district court's grant of AMZCO's oral motion for summary judgment.[10] *Cf. Portsmouth Square, Inc. v. Shareholders Protective Committee*, 770 F.2d 866, 869-70 (9th Cir. 1985) (concluding that the district court did not err in granting summary judgment *sua sponte* to defendant without giving ten-days notice to plaintiff where plaintiff was on notice that it might have to defend the adequacy of its claim and had a full opportunity to develop the facts in support of its case and to present its legal theory and facts supporting that theory to the district court).[11]

---

[10]We also note that Rowe, Campbell, and Global each failed to object to the district court's expedited grant of summary judgment. As a result, they waived their procedural challenges to the district court's expedited grant of summary judgment absent a showing of plain error, which is "error committed [that] is so obvious and substantial that failure to notice and correct it would affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Fant*, 974 F.2d 559, 565 (4th Cir. 1992) (internal quotation marks omitted); *see Oberg v. Allied Van Lines, Inc.*, 11 F.3d 679, 684 (7th Cir. 1993) (stating that Allied waived its right to appeal the district court's noncompliance with the ten-days-notice rule because it failed to object before the trial court); *Trustees of Sabine Area Carpenters' Health & Welfare Fund v. Don Lightfoot Home Builder, Inc.*, 704 F.2d 822 (5th Cir. 1983) (same). We have no difficulty concluding that even if the district court's invitation and grant of AMZCO's oral motion for summary judgment without 10-days notice was not harmless error, it was certainly not plain error.

[11]Rowe and Campbell also argue that because they were *pro se* litigants, the district court erred in failing to give them notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (per curiam), prior to granting AMZCO's motion for summary judgment. We note, however, that we are unaware of any published decisions in our Circuit applying *Roseboro* outside of the prisoner context. *See*, *e.g.*, *Altizer v. Deeds*, 191 F.3d 540 (4th Cir. 1999) (applying *Roseboro* in the prison

## B.

Having concluded that the district court did not commit reversible procedural error in considering AMZCO's oral motion for summary judgment, we now turn to the substance of Rowe, Campbell, and Global's state law claims upon which the district court granted summary judgment to AMZCO. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, demonstrate that there is no genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A dispute of material fact "is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "We review a grant of summary judgment de novo, applying the same standard as the district court." *Baber v. Hospital Corp. of America*, 977 F.2d 872, 874 (4th Cir. 1992). In doing so, we view all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

## 1.

Rowe, Campbell, and Global argue that the district court erred in concluding that there is no triable issue of fact as to their fraud claims. Rowe, Campbell, and Global's fraud claims were predicated upon AMZCO's failure to return title to the medical vehicles after Rowe (through Global) sent AMZCO a check to repay AMZCO for its prior funding.[12] (*See* J.A. at 127N (alleging that "there was a separate oral contract between Rowe and Campbell and [AMZCO] that upon repayment by Rowe and Campbell to [AMZCO] of the money loaned,

---

inmate context), *cert. denied*, 119 S. Ct. 1121 (1999); *Taylor v. McDuffie*, 155 F.3d 479 (4th Cir. 1998) (same); *Norman v. Taylor*, 25 F.3d 1259 (4th Cir. 1994) (en banc) (same). In any case, for the same reasons as discussed above, even if we assume that the district court erred in failing to give Rowe and Campbell *Roseboro* warnings, such error was, at most, harmless.

[12]At the hearing, Global characterized its fraud claim as "derivative" of Rowe and Campbell's fraud claims. (J.A. at 250.)

[AMZCO] would return the title documents to Rowe and Campbell free and clear of any encumbrances").) The district court, in granting summary judgment as to those claims, reasoned that "any allegations about the failure to return title, that is simply a breach of contract matter. I have already found as a matter of summary judgment that they did in fact breach the contract, but I don't find anywhere in the evidence any evidence of fraud in that connection." (J.A. at 248.)

To recover for fraud against AMZCO, Rowe, Campbell, and Global must prove by clear and convincing evidence the following elements: (1) a false representation; (2) of a material fact; (3) made intentionally and knowingly; (4) with intent to mislead; (5) reliance by the party misled; and (6) resulting damage. *Hitachi Credit America Corp. v. Signet Bank*, 166 F.3d 614, 628 (4th Cir. 1999) (applying Virginia law). "In determining whether a cause of action sounds in contract or tort, the source of the duty violated must be ascertained." *Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 507 S.E.2d 344, 347 (Va. 1998). Although a party can, under some circumstances, establish both a tortious breach of duty and a breach of a contract duty, "'the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract.'" *Id.* (quoting *Foreign Mission Bd. v. Wade*, 409 S.E.2d 144, 148 (Va. 1991)).

After carefully reviewing the record, we agree with the district court that Rowe, Campbell, and Global have failed to raise a triable issue of fact that their claims are anything more than an "'attempt to dress up a contract claim in a fraud suit of clothes.'" *City of Richmond v. Madison Management Group, Inc.*, 918 F.2d 438, 447 (4th Cir. 1990) (quoting *Triangle Underwriters, Inc. v. Honeywell, Inc.*, 604 F.2d 737, 747 (2d Cir. 1979)). Their fraud claims arise from a purported conversation between AMZCO and Rowe, during which AMZCO allegedly induced Rowe to repay AMZCO with Global's money under the false promise that AMZCO would return title to the medical vehicles for the benefit of Global. Their most direct evidence on these claims is Campbell's affidavit, which states simply that AMZCO "told me that [it] would return the original title documents . . . as soon as I paid [it] back the money it had provided." (J.A. at 298.) Campbell's affidavit, at best, shows that AMZCO made an oral contract that AMZCO subsequently breached. This act, by itself, is

nothing more than a breach of contract. Rowe, Campbell, and Global have not pointed to any evidence in the record, nor can we find any, to suggest that AMZCO's duty to return title to Rowe arose from anything other than a contractual duty, and the district court has ruled in favor of Rowe and Campbell on their breach of contract counterclaim and required AMZCO to return title to the medical vehicles. Accordingly, we affirm the district court's grant of summary judgment as to Rowe, Campbell, and Global's fraud claims.

2.

We next address whether the district court erred in granting summary judgment as to Rowe, Campbell, and Global's other state law claims. Because the record before us is unclear, we cannot determine whether the district court erred in determining that summary judgment is appropriate as to those state law claims. We, therefore, reverse and remand those claims for further proceedings consistent with this opinion.

The district court, both in its statements at the summary judgment hearing and in its written order, specifically mentioned only Rowe, Campbell, and Global's "fraud" claims when it disposed of the entire case, even though Rowe, Campbell, and Global, between the three of them, had asserted claims for unjust enrichment, detinue, trover, unlawful conversion, and tortious interference with contract, as well as fraud. Although the district court issued a written order memorializing its oral conclusions from the hearing, it did not issue a written memorandum opinion. It is unclear to us whether, and upon what rationale, the district court summarily rejected all of Rowe, Campbell, and Global's other state law claims. The district court's written order does not in any way clarify the district court's rationale, nor does it explain whether the disposition of the "fraud" claims encompassed all of Rowe, Campbell, and Global's other state law claims. No party points to any reference in the record where either the district court or the parties discussed the other claims at the hearing. Given the lack of clarity in the record, and because the district court is in the best position to amplify its conclusions, we believe that the best course is to remand Rowe, Campbell, and Global's remaining state law claims for further proceedings consistent with this opinion.

### 3.

Finally, because this issue will likely surface on remand, we address Rowe's argument that we should reverse the district court's grant of summary judgment in favor of AMZCO as to Rowe's request for consequential damages because, Rowe contends, under Virginia law, foreseeability is a question of fact for the jury. On the record before us, we cannot agree with the district court that, as a matter of law, Rowe is not entitled to recover consequential damages resulting from AMZCO's breach of the financing agreement. We, therefore, reverse the district court's grant of summary judgment on Rowe's request for consequential damages and remand for further proceedings, contingent on Rowe acquiring counsel to proceed.[13]

---

[13]Campbell, like Rowe, also argues that he should receive consequential damages resulting from AMZCO's breach of contract. The district court did not address whether Campbell had standing to pursue his claims, nor was this issue raised by any of the parties. However, standing is a jurisdictional issue that we may raise at any time. *See Juidice v. Vail*, 430 U.S. 327, 331 (1977). On remand, the district court should consider whether Campbell has standing to recover under the financing contract or to pursue his state law counterclaims.

We note that under Virginia law, neither a shareholder nor an officer has standing to recover for injuries to the corporation. *See Landmark Communications, Inc. v. Macione*, 334 S.E.2d 587, 589 (Va. 1985) ("[A] corporation, as owner and operator of a business, is itself the only person entitled to recover for injuries to its business, profits, or property."); *Keepe v. Shell Oil Co.*, 260 S.E.2d 722, 724 (Va. 1979) ("The Keepes argue that they have legal standing because, as stockholders of the corporation, they are actual owners of the business and all its assets . . . . We reject this argument. The corporation is a legal person, separate and distinct from the persons who own it . . . ."); *see also Semida v. Rice*, 863 F.2d 1156, 1161 (4th Cir. 1988) (applying Virginia law to hold that an individual lacked standing to assert a tortious interference with contract claim that asserted interference with his corporation's contract); *Mullins v. First Nat'l Exchange Bank*, 275 F. Supp. 712, 721 (W.D. Va. 1967) (noting, in a tort action under Virginia law, that "[t]he rule is that an officer or a shareholder of a corporation, even if he is the sole shareholder, has no personal or individual right of action against third parties for a wrong or injury inflicted by those third parties upon the corporation").

We recognize that under Virginia law, the foreseeability of consequential damages is generally a question for the jury. *See Richmond Medical Supply Co. v. Clifton*, 369 S.E.2d 407, 409 (Va. 1988) ("Whether claimed damages are direct or consequential is a question of law for the trial court. Whether special circumstances were within the contemplation of the parties so as to justify the recovery of consequential damages is a question of fact for the jury."). "Consequential damages are those which arise from the intervention of 'special circumstances' not ordinarily predictable . . . . If damages are determined to be consequential, they are compensable only if it is determined that the special circumstances were within the 'contemplation' of both contracting parties." *Roanoke Hosp. Ass'n v. Doyle & Russell, Inc.*, 214 S.E.2d 155, 160 (Va. 1975). "'[C]ontemplation' includes what was actually foreseen and what was reasonably foreseeable. 'If there are special circumstances, it is not even necessary that the defendant should have known them; *it is enough that a reasonable man in his position would have known them*.'" *Id.* at 160 n.4 (quoting 5 A. Corbin, *Contracts* § 1010(79) (1964)) (emphasis in original). In general, "contemplation must exist at the time the contract was executed." *Id.* at 160.

In the present case, the district court summarily rejected Rowe's request for consequential damages resulting from AMZCO's breach

---

In the present case, we cannot determine from the undeveloped facts in the record whether Campbell has standing to pursue his claims. On the one hand, the contract between Rowe and AMZCO, in a single sentence, lists Campbell as a "borrower" under the contract. Likewise, the July 26 amendment purports to obligate Campbell to assign his proceeds under the Army Contract to AMZCO. Yet, Campbell signed the contract only in his capacity as Rowe's president and not in his individual capacity. Moreover, Rowe and Campbell's amended answer and counterclaims deny "that Campbell acted, at any time, in his individual capacity." (J.A. at 127C.) Finally, Campbell and Rowe's counsel, when specifically asked at oral argument about the basis of Campbell's individual claims, stated that Campbell's claims are only representational in nature in his capacity as an officer of the company on behalf of Rowe, and that Campbell does not have any individual claims against AMZCO that are separate and distinct from Rowe's claims.

of the financing agreement, concluding as a matter of law that the circumstances — the Army's termination of the contract and Rowe's subsequent financial collapse — were not foreseeable.[14] AMZCO does not dispute that foreseeability is generally a question of fact for the jury, but it argues that the district court did not err because Rowe "failed to meet the legal standard required to present a question of fact to the jury as to whether the 'special circumstances' that produced the damages were within the contemplation of the parties and therefore, compensable." (Appellee's Br. at 20.) In support of this argument, AMZCO relies upon *NAJLA Assocs., Inc. v. William L. Griffith & Co.*, 480 S.E.2d 492 (Va. 1997). In that case, Griffith was a general contractor for NAJLA for a project to construct a shopping center. *See id.* at 493. After Griffith and its bonding company became concerned that NAJLA intended to finance the project without a loan from any financial institution, Griffith and NAJLA executed an escrow agreement that created an identifiable source of money to secure NAJLA's payment obligations from which Griffith could obtain payment if NAJLA failed to pay in a timely manner. *See id.* After construction was nearly completed and NAJLA refused to pay Griffith, Griffith received payment from the escrow account. *See id.* The escrow agreement required NAJLA promptly to reimburse the escrow account for any payments made to Griffith from that account, but NAJLA refused to do so. *See id.* Griffith subsequently filed suit against NAJLA seeking consequential damages arising from NAJLA's breach of the escrow agreement. *See id.* Griffith alleged, among other things, that as a result of its dispute with NAJLA, its bonding company reduced its "work program" (the total volume of bonded business that a bonding company permits a contractor to perform), that certain subcontractors were no longer willing to work with Griffith because Griffith had been delinquent in its payments on the project, and that Griffith experienced cash flow problems. *See id.* at 494. The gist of Griffith's claim was that "NAJLA understood the importance of Griffith's relationship with its bonding company and that the manipulation of the

---

[14]The district court stated that "I simply find that it is just not foreseeable that somebody is going to go out of business as a result of this breach of contract, and it is not a natural consequence of that breach. And I just so find. That is just not an element of damage in this case." (J.A. at 263.) The district court's written order states only that the damages "were not foreseeable as a matter of law." (J.A. at 278.)

escrow account would significantly impair that relationship to Griffith's detriment." *Id.* (internal quotation marks omitted). The jury found in Griffith's favor and the trial court upheld the verdict. *See id.*

The Supreme Court of Virginia, however, reversed the trial court's judgment, concluding that "Griffith presented no evidence which would permit the jury to find that when the contracting parties signed the escrow agreement, they contemplated that had NAJLA breached that agreement, such breach would have restricted Griffith's 'work program,' thereby preventing Griffith from bidding on projects." *Id.* The court further noted that "Griffith did not present any evidence that NAJLA was even aware of Griffith's 'work program' when the escrow agreement was executed," *id.*, and that Griffith failed to present evidence "that either party to the contract contemplated that Griffith's future costs for subcontractors would increase as a result of NAJLA's breach of the escrow agreement," *id.* at 494-95, or that either party contemplated that Griffith would later experience cash flow problems, *see id.* at 495.

The facts in the record before us are distinguishable from *NAJLA*. First, Griffith's allegations were predicated upon *future* injuries that were removed from the underlying escrow agreement that NAJLA had breached — i.e., that Griffith could not bid on certain projects because of the "work program" and that it faced higher costs in retaining subcontractors for future projects. Rowe's injuries, by contrast, are arguably much closer to the underlying breach. It follows naturally from AMZCO's breach of the financing agreement that Rowe could not pay its suppliers for the Army Contract itself (the intent for which the financing agreement was signed), and that Rowe would be subject to lawsuits and other related problems. Second, because the financing contract in this case was intended, from the beginning, to fund the Army Contract and its related costs, a plausible argument can be made, on the facts presently before us, that the parties contemplated that AMZCO's breach of the financing contract would impede Rowe's ability to pay its bills and fulfill its obligations under the Army Contract. We simply cannot agree, at this stage of the proceedings, that Rowe's claim for consequential damages must fail as a matter of law.[15] *See R.K. Chevrolet, Inc. v. Hayden*, 480 S.E.2d 477, 481

---

[15]We recognize the possibility that, on remand, further facts may surface that might establish that Rowe cannot recover consequential damages for AMZCO's breach of contract.

(Va. 1997) (reversing trial court's conclusion that R.K. Chevrolet, as a matter of law, could not recover consequential damages because "[a] jury reasonably could conclude that the sole purpose of the contract was to prevent a loss of business and the resulting damages to R.K. Chevrolet and that both parties contemplated the potential for such damages at the time they entered into the contract"); *Richmond Medical Supply*, 369 S.E.2d at 409 ("Thus, having properly determined that RMS's claimed damages were consequential in nature, the trial court erred in failing to submit the 'contemplation' issue to the jury . . . ."). Accordingly, we reverse and remand this issue to the district court for further proceedings consistent with this opinion.

## IV.

In conclusion, Rowe's notice of appeal is not jurisdictionally defective because Rowe promptly filed a corrected notice of appeal. We affirm the district court's grant of summary judgment as to Rowe, Campbell, and Global's fraud claims, but we remand Rowe, Campbell, and Global's other state law claims. We reverse and remand the district court's conclusion that, as a matter of law, consequential damages for AMZCO's breach of the financing agreement are not available.

*AFFIRMED IN PART, REVERSED IN PART,*
*AND REMANDED*